**Clara GALARD, Plaintiff-Appellee,**

**v.**

**Dean JOHNSON, Defendant-Appellant.**

**No. 73–1815.**

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1974.

Decided Oct. 25, 1974.

Timothy W. Woods, South Bend, Ind., for defendant-appellant.

Samuel J. Bernardi, Jr., Valparaiso, Ind., for plaintiff-appellee.

Before PELL and STEVENS, Circuit Judges, and LARAMORE, Senior Judge.[*]

PELL, Circuit Judge.

This is a personal injury case in which negligence was admitted by the defendant, Dean Johnson, and the only issue presented to the jury was the amount of damages, if any, to which the plaintiff, Clara Galard, was entitled for any injuries she sustained as a result of an automobile accident. The jury returned a verdict in the amount of $45,000 for the plaintiff. The principal issue on appeal is whether the district court erred in denying Johnson's motion for a new trial on the ground that the verdict was excessive, being against the manifest weight of the evidence.

I

A motion for a new trial on the ground of inadequate or excessive damages is addressed to the discretion of the trial court. Fronz v. Pennsylvania R. R. Co., 239 F.2d 639, 640 (7th Cir. 1956); Bucher v. Krause, 200 F.2d 576, 586 (7th Cir. 1952), cert. denied, 345 U. S. 997, 73 S.Ct. 1141, 97 L.Ed. 1404 (1953). To reverse the judgment below, we must conclude that the verdict was so "gross" or "monstrously excessive" that the trial judge abused his discretion in permitting it to stand. Quilter v. Elgin, Joliet & Eastern Ry. Co., 409 F.2d 338,

[*] Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

340 (7th Cir. 1969); Price v. H. B. Green Transp. Line, Inc., 287 F.2d 363, 365 (7th Cir. 1961).[1] As the Second Circuit has noted, "[t]he very nature of the problem counsels restraint." Dagnello v. Long Island R. R. Co., 289 F.2d 797, 806 (2d Cir. 1961). Damages assessed by a jury are largely discretionary with it. "Just as the trial judge is not called upon to say whether the amount is higher than he personally would have awarded, so are we appellate judges not to decide whether we would have set aside the verdict if we were presiding at the trial, but whether the amount is so high that it would be a denial of justice to permit it to stand." Dagnello v. Long Island R. R. Co., *supra* at 806; Bucher v. Krause, *supra*, 200 F.2d 587.

The evidence in the present case indicated that in the accident, which occurred in August 1968, the automobile in which Mrs. Galard was riding was struck from the rear and thrown into a line of motorcycles resulting in a second impact. The collision caused the plaintiff, who was riding in the back seat, to be thrown forward and sideways and pinned between the front and back seats of the car.

Mrs. Galard testified, at the trial, that prior to the accident, she had never had any headaches or any problems with her abdomen, back, or legs. According to the plaintiff, her health in general before the accident was "A–1." Mrs. Galard testified that immediately after the accident she was in great pain and was taken to a hospital. She stated that, at that time, she had a bump on her forehead and severe pain in her shoulders, back, neck, abdomen, and left leg. There were bruises, Mrs. Galard testified, over large parts of her body and her left calf was swollen. The plaintiff remained in the hospital for four or five days before going home.

Mrs. Galard testified that since the accident and continuously until the time of the trial five years later, she had headaches and severe pain in her back, abdomen and left leg. The plaintiff also stated that, on occasion, she experienced difficulty walking. Mrs. Galard further testified that, due to the pain, she could no longer do heavy work around the house but could do only light household chores. Finally, Mrs. Galard testified about the various costs which she had incurred as a result of her injuries.

Much of Mrs. Galard's testimony was supported by that of her daughter, Judy Witek. Mrs. Witek testified that, prior to the accident, her mother never complained of pain and was always able to do her housework. Mrs. Witek stated that, after the accident, the plaintiff complained of pain, was unable to do housework, and, on occasions, had difficulty walking.

In addition to the testimony of Mrs. Galard and her daughter, the jury also heard extensive medical testimony concerning the extent and cause of Mrs. Galard's injuries. The two physicians who had treated Mrs. Galard after her initial hospitalization both testified, by deposition, on behalf of the plaintiff.

Johnson argues that since this testimony was by way of deposition, this court is at no peculiar disadvantage vis-a-vis the trial court and jury with respect to seeing and observing these two witnesses. While testimony introduced in deposition form cannot be the basis of credibility determinations of the type to which the live witness is subjected, such as demeanor on the stand, here Mrs. Galard, as a live witness whose credibility was exceedingly important to her cause, was subjected to these wit-

1. It is well settled that even in a case in which jurisdiction of the district court is based on diversity of citizenship and in which the appropriate state law controls on all substantive questions, the standard of review with respect to a motion for a new trial on the basis of excessive damages is determined by federal law. Blasky v. Whealey Trucking, Inc., 482 F.2d 497, 498 (6th Cir. 1973); Novak v. Gramm, 469 F.2d 434 (8th Cir. 1972); Humble v. Mountain State Constr. Co., 441 F.2d 816, 820 (6th Cir. 1971); 11 Wright & Miller, Federal Practice & Procedure: Civil § 2802 (1973).

ness-chair tests. She apparently was not found wanting. Further, insofar as the live medical testimony introduced by the defense was concerned, the credibility determination could have taken the form of discrediting. The coin is two-sided.

Dr. George Downes, a general practitioner, testified that from July 1972 until the time of the trial in May 1973, Mrs. Galard had visited him once or twice a week. Dr. Downes stated that his examinations of the plaintiff revealed tenderness in the abdomen and lower back, a muscle spasm in the lower back, hardening of the left calf, and limitations in movement in the neck, hips, and left knee. Dr. Downes also testified that, in his opinion, Mrs. Galard's headaches and pains in her neck, back, and leg were the result of the accident and were permanent in nature. The doctor stated that he himself had not seen x-rays of the plaintiff's back and, therefore, did not know whether Mrs. Galard had arthritis, but that his diagnosis would remain the same even if she did in fact have arthritis. Finally, Dr. Downes testified that, in his opinion, Mrs. Galard was truthful about her symptoms and was not a malingerer.

Dr. Elsie Eng, an osteopathic physician specializing in internal medicine, testified that she treated Mrs. Galard from September 1968 until August 1970.[2] Dr. Eng, like Dr. Downes, stated that her examinations of the plaintiff revealed tenderness in the neck, back, abdomen, and leg as well as limitation in movement in the neck and back. Dr. Eng also noted a hardening of the tissue in the plaintiff's left calf. In August 1970, at the time of her last examination of Mrs. Galard, the plaintiff, according to Dr. Eng, was unable to bend forward and had pain when assuming an upright position. An x-ray examination indicated, Dr. Eng stated, that Mrs. Galard had an arthritic condition in her back. Dr. Eng testified that the automobile accident could, and probably did, aggravate the arthritic condition to a point where it was causing somewhat constant pain. Dr. Eng concluded that the plaintiff's symptoms were, in all likelihood, related to the automobile accident and that the back injury and pain were permanent in nature.

The defense medical experts,[3] on the other hand, testified essentially, that any injuries or pains that Mrs. Galard suffered as a result of the accident were not long lasting or permanent. If Mrs. Galard did continue to experience pain, such pain, according to these medical experts, was caused by medical conditions unrelated to the automobile accident, including arthritis, hardening of the arteries, and high blood pressure. In addition to reliance on these medical experts, the defendant points to certain apparent contradictions in the testimony of Dr. Eng. The defense contends that, on the basis of the medical testimony presented by the defense, the judgment should be reversed.

The defendant's argument that the defense medical experts should be believed (and the plaintiff's experts discredited) is essentially the same argument that he made to the jury and later to the district judge in the motion for a new trial. Both the jury and the district judge heard the evidence and observed the demeanor of most of the witnesses. It was, of course, the function of the jury to weigh the contradictory evidence and inferences, to judge the credibility of witnesses, and to draw the ultimate conclusions as to the facts.[4]

2. Dr. Eng saw Mrs. Galard approximately seven times in 1968; one time in 1969; and seven times in 1970.

3. The defense medical experts included Dr. Edward Mladick, the orthopedic surgeon who examined Mrs. Galard at the hospital immediately after the accident; Dr. Morris Fried-man, an orthopedic surgeon; and Dr. Martin Feferman, a neurological surgeon. The latter two doctors had each examined Mrs. Galard on one occasion.

4. The defendant did not object to the instruction given to the jury concerning the elements of damages they could consider in

We cannot say that the expert testimony of Dr. Downes and Dr. Eng was so incredible that the jury could not have relied upon it in reaching its verdict. Both of these physicians had treated Mrs. Galard for extended periods of time and both apparently concluded that she was being truthful about her pains, that her symptoms were the result of her automobile accident, and that at least some of the ailments were permanent in nature. The defense was free to argue that Dr. Eng had made apparently contradictory statements on other occasions. Resolving such conflicts within a witness's testimony is a matter for the jury. Moreover, the very nature of the issue presented—the extent and cause of the plaintiff's pain—made the matter of Mrs. Galard's credibility particularly important. Here again, we cannot say that this testimony was so incredible that the jury could not have relied upon it.

■ The amount of the verdict, $45,000, is no doubt sizable. Indeed, a very few decades ago it might well have been deemed outlandish. Viewing it, however, in the context of present-day verdicts, it does not seem as startling and when contrasted with the prayers of complaints of the current period of personal injury litigation, it has almost an aura of insignificance. The day of the umbrella policy is at hand and not surprisingly the advent of no-fault insurance has been precipitated. The factor of inflation undeniably has contributed to the change. Juries undoubtedly are considering "the pattern of steadily increasing wages and the decreasing purchasing power of our currency." Quilter v. Elgin, Joliet & Eastern Ry. Co., *supra*, 409 F.2d at 340.

In the present case, Johnson's vigorous efforts on appeal to fight against the tide may well have been initiated by the fact that upon admission to the hospital following the accident, Mrs. Galard was found by the treating physician, an orthopedic surgeon, to be suffering only from multiple minor bruises and a general feeling of illness. Experienced defense counsel need not be reminded that severe and permanent injuries are not necessarily presaged by immediate dire symptoms.

■ In any event, as stated before, it is not our function to substitute our view of a proper award for that returned by the jury. The only question before us is whether the district court abused its discretion in concluding that the jury did not abuse its discretion. Fronz v. Pennsylvania R. R. Co., *supra*, 239 F.2d at 640. Viewing the evidence, as we must, in the light most favorable to the plaintiff,[5] Seifert v. Solem, 387 F.2d 925, 929 (7th Cir. 1967), we cannot say that the district court abused this discretion.

## II

In addition to the contention that the verdict was excessive, the defendant

---

arriving at their verdict. The elements of damages listed in the instruction were:

"1) The nature and extent of injuries;

2) Whether the injuries are permanent or temporary;

3) The physical pain and mental suffering experienced and reasonably certain to be experienced in the future as a result of the injuries;

4) The reasonable expense of necessary medicines, treatments and services, and reasonable expense of future medicines, treatments and services;

5) The aggravation of pre-existing injury, disease or conditions; and

6) The past and future inability of the plaintiff to perform her normal functions in life, including her household duties."

5. The defendant argues that the determination of excessive damages is a question of law to be decided by the court after a detailed analysis of all of the evidence. No doubt, "there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law." *Dagnello, supra*, 289 F.2d at 806. The thrust of the defendant's argument in the present case, however, appears to be that we should weigh the evidence, and on a balancing of the evidence, which here was certainly conflicting, determine that as a matter of fact the verdict was not justified. We, in any event, have reviewed the evidence and declined to say that the upper limit has been surpassed.

presented two other grounds in support of his motion for a new trial. The district court rejected both of these additional grounds and the defense now claims that this requires reversal.

The defense contends that the district court erred in admitting into evidence certain medical, prescription, doctor, housecleaning, and cab fare bills. The defendant states that, under Indiana law, the measure of damages for medical services is "the reasonable and fair value of medical expenses necessarily incurred" by the plaintiff. Herrick v. Sayler, 160 F.Supp. 25, 29 (N.D.Ind. 1958); Kampo Transit, Inc. v. Powers, 138 Ind.App. 141, 161, 211 N.E.2d 781, 793 (1965).

■ We agree with the district judge that there was evidence at the trial indicating that the bills were necessarily incurred as a result of treatment for injuries suffered in the accident and that there was no evidence to show that the bills were unreasonable in amount.[6] With respect to the cab fare bills, Mrs. Galard's undisputed testimony was that she did not drive and that she incurred cab fares in visiting the doctors' offices and in picking up prescriptions from the drugstore. On the question of the household bills, Mrs. Galard testified that, due to the pain resulting from the accident, she was unable to do housework for a period of time after the accident and that she paid to have someone perform these chores. With respect to the medical and prescription bills, both Mrs. Galard and the physicians who treated her testified that the plaintiff received pain-producing injuries in the accident and that treatment and drugs were necessary to relieve this pain.[7] Given this evidence and the fact that the defense made no showing of unreasonableness in amount, the district court did not err in denying a new trial on this ground.

■ Finally, the defendant contends that a new trial is necessary because one witness, Judy Witek, was permitted to testify at the trial although she was not listed in the pretrial order as a witness for the plaintiff. The defense, however, knew prior to the trial that the plaintiff intended to call Mrs. Witek as a witness and knew the specific subject of her testimony. While the testimony was helpful to the plaintiff's case and presumably therefore hurtful to the defense, the defendant has shown no prejudice from the fact that the witness's name was not included in the pretrial order. Under these circumstances, the district court properly denied the defendant's motion for a new trial on this ground.

Affirmed.

6. The prescription bills over a five year period totaled $131.48; the cab fare bills amounted to $51.10; the household bills amounted to $595.00.

7. The defendant points out that Dr. Eng stated that she also prescribed diet and high blood pressure pills for the plaintiff on occasions and that the plaintiff's weight and high blood pressure were not necessarily related to the accident. Mrs. Galard testified, without dispute, however, that all of the prescription exhibits which were introduced at trial were connected with her injuries from the accident.