**Helen L. HUFF, Administratrix of the Estate of Jessee Huff, Deceased, Plaintiff-Appellee, Cross-Appellant,**

v.

**WHITE MOTOR CORPORATION, Defendant-Appellant, Cross-Appellee.**

**Nos. 78–2540, 78–2541.**

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1979.
Decided Oct. 9, 1979.

Hugh Watson, Indianapolis, Ind., for defendant-appellant, cross-appellee.

Windle Turley, Dallas, Tex., for plaintiff-appellee, cross-appellant.

Before SPRECHER, Circuit Judge, GEWIN, Senior Circuit Judge,* and TONE, Circuit Judge.

TONE, Circuit Judge.

In the trial of this diversity action for wrongful death, the court excluded a statement of the plaintiff's decedent, made while he was hospitalized for treatment of the injuries from which he later died. We hold that unless the declarant was not mentally competent when he made the statement, it should have been admitted under the so-called residual exception to the hearsay rule established by Rules 803(24) and 804(b)(5) of the Federal Rules of Evidence. We remand for a determination by the district court of the preliminary question of competence and for a new trial if the declarant is found to have been competent. Because the direction of a new trial is conditional, we reach other issues and hold, *inter alia*, that the district court did not abuse its discretion in refusing to set aside the verdict as excessive and correctly refused to allow punitive damages under the Indiana wrongful death statute, Ind.Code Ann. § 34–1–1–2 (Burns).

In a previous appeal in this case we held that under Indiana law a manufacturer has a duty to design a motor vehicle so that it will not be unreasonably dangerous if it is involved in a collision, and therefore we reversed a summary judgment for defendant based on a contrary view of Indiana law. *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977). In the opinion in that case the essential facts were summarized as follows:

> On September 4, 1970 Jessee Huff was driving a truck-tractor manufactured by the defendant White Motor Corporation near Terre Haute, Indiana when it jackknifed on the highway, sideswiped a guardrail, and collided with an overpass support. Aside from the structural damage to the tractor, the fuel tank ruptured and caught fire. The flames engulfed the cab area occupied by Huff. The severe burns he received in the fire caused his death nine days later. Helen L. Huff filed this action seeking damages for wrongful death of her husband based on the theory that the defective design of the fuel system caused the fire that took Huff's life.

*Id.* at 105.

At the trial on remand, the jury returned a verdict awarding plaintiff $700,000 in compensatory damages. Defendant appeals from the judgment on the verdict, arguing trial error, and plaintiff cross-appeals, arguing that the court should have allowed the jury to consider awarding punitive damages.

---

* The Honorable Walter P. Gewin, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

## I.

### Admissibility of Decedent's Statement

Defendant offered and the trial court excluded the testimony of Melvin Myles, who was the husband of Mrs. Huff's cousin and a friend and neighbor of the Huffs for many years. Myles' testimony, presented out of the presence of the jury, was that, when he and one Richard King visited Huff in his hospital room two or three days after the accident, Huff gave the following description of how the accident occurred:

> [H]e told us first more or less what happened and this U.S. 41 there has a bad curve there and he told us as he was approaching the curve or starting into it his pant leg was on fire and he was trying to put his pant leg out and lost control and hit the bridge abutment and then the truck was on fire . . . .

■ The district court excluded this testimony as hearsay, rejecting defendant's argument that Huff's statement was an admission under Rule 801(d)(2) or admissible under the residual exception, Rules 803(24) and 804(b)(5). On appeal, defendant argues that the evidence was admissible on both theories the district court rejected and also as a statement against interest under Rule 804(b)(3).[1] We do not consider the latter argument, because Rule 804(b)(3)

was not mentioned to the district court as a basis for admitting the evidence.[2]

■ Defendant first argues that Huff's statement is admissible as an admission because privity exists between Huff and his widow, who brings this wrongful death action. At common law, privity-based admissions have been "generally accepted by the courts," according to McCormick, *Handbook of the Law of Evidence* 647 (2d ed. 1972). Plaintiff argues that privity is lacking here because under Indiana law, *see Estate of Pickens v. Pickens*, 255 Ind. 119, 127, 263 N.E.2d 151, 156 (1970), a wrongful death action is not derivative. We agree with McCormick that this should not be controlling, and that the exclusion by "some courts" of statements of the deceased in wrongful death cases because the action is not "derivative" is based on "a hypertechnical concept of privity." McCormick, *supra*, at 648 n.51.

■■ The admissibility of privity-based admissions in the federal courts is now controlled, of course, by the Federal Rules of Evidence. A reading of Article VIII of those rules, the article on hearsay, leads us to conclude that privity-based admissions are to be tested for admissibility under the residual exception provided for in Rules 803(24) and 804(b)(5) rather than under the

---

1. *See, e. g., Hileman v. Northwest Engineering Co.*, 346 F.2d 668, 669–670 (6th Cir. 1965) (cited in Advisory Committee's Note to Rule 804(b)(3)); *Gichner v. Antonio Troiano Tile & Marble Co.*, 133 U.S.App.D.C. 250, 253–255, 410 F.2d 238, 241–243 (D.C. Cir. 1969); *Pennsylvania R.R. v. Rochinski*, 81 U.S.App.D.C. 320, 158 F.2d 325 (D.C. Cir. 1946).

2. Evidence Rule 103(a), while expressly requiring that the ground of the objection be stated if a ruling admitting the evidence is to be challenged on review, does not contain a similar requirement as a condition to urging error in the exclusion of evidence. Rule 46 of the Federal Rules of Civil Procedure, however, left standing when the Federal Rules of Evidence were adopted, implies such a requirement by providing that

> for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling of the court is made or sought, makes known to the court the action which he desires the court to take

or his objection to the action of the court and his grounds therefor.

We think this provision requires that the ground of admissibility be stated in the circumstances present here. *Cf. United States v. Thomas*, 429 F.2d 407, 408 (5th Cir. 1970), relying on dictum in *Landers v. United States*, 304 F.2d 577, 578–579 & n.1 (5th Cir. 1962) (referring to Fed.R.Crim.P. 51, the counterpart of Fed.R.Civ.P. 46). When an objection identifies the rule of evidence on which admission or exclusion depends, the proponent ordinarily need not do more to preserve error than offer the evidence. But when the objection, hearsay in this case, does not focus on the specific issue presented on review, here the applicability of the statement-against-interest exception, error is not preserved unless the proponent alerts the trial court to that issue. This is in accord with the general principle that to preserve error in a ruling on evidence a party must notify the trial court of his position and the specific rule of evidence on which he relies.

admissions provision, Rule 801(d)(2). Although neither the rules themselves nor the Advisory Committee Notes refer to privity-based admissions, and Congress added nothing on the subject in its consideration of the rules, the language of Rule 801(d)(2) and the general scheme of the hearsay article support our conclusion. Privity-based admissions are within the definition of hearsay, Rule 801(c), an extra-judicial statement offered "to prove the truth of the matter asserted," and are not among the specifically defined kinds of admissions that despite Rule 801(c) are declared not to be hearsay in Rule 801(d)(2). Nor are they covered by any of the specific exceptions to the hearsay rule listed in Rules 803 and 804. Thus privity-based admissions are not admissible as such, if the rules are to be read literally. Moreover, the very explicitness of Rule 801(d)(2) suggests that the draftsmen did not intend to authorize the courts to add new categories of admissions to those stated in the rule. No standards for judicial improvisation or discretion are provided in Rule 801(d)(2), as they are in Rules 803(24) and 804(b)(5).[3]

The admissibility of Huff's statement depends, therefore, upon the residual exception, which is stated in Rules 803(24) and 804(b)(5):[4]

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

We recognize at the outset that in applying this exception the district court has a considerable measure of discretion. *United States v. Friedman*, 593 F.2d 109, 118 (9th Cir. 1979). If, however, we arrive at "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors," *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954), and that the error was prejudicial, we must reverse. We also recognize that Congress "intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." Committee on the Judiciary, S.Rep.No.93–1277, Note to Paragraph (24), 28 U.S.C.A. Fed.R. Evid. p. 583 (1975); *see also United States v. Kim*, 193 U.S.App.D.C. 370, 379–380, 595 F.2d 755, 764–765 (D.C. Cir. 1979); *United States v. Bailey*, 581 F.2d 341, 346–347 (3d Cir. 1978). We think such circumstances are present here.

In reviewing a ruling made in the exercise of the trial court's discretion, we are greatly aided when the record contains a statement of the reasons for the ruling and any findings made under Rule 104(a) on preliminary questions of fact relevant to admissibility. Here nothing of this sort is available. Although the defendant relied on the residual exception, it was not mentioned in the court's explanation of its ruling excluding the evidence.[5] Under these

---

3. McCormick, a source frequently cited in the Advisory Committee Notes with respect to other matters, states,

   In any event, the meritorious cases will in general qualify as declarations against interest or other hearsay exception more soundly based than admissions founded on privity. McCormick, *supra*, at 649.

4. The two provisions are identical, and Rule 804(b)(5) is therefore redundant, since 803(24) applies whether or not the declarant is a witness. *See* J. Waltz, *The New Federal Rules of Evidence* 171 (2d ed. 1975).

5. The judge stated that he was excluding the evidence because it was hearsay and did not fall under certain specific hearsay exceptions,

circumstances, we have little choice except to attempt to replicate the exercise of discretion that would be made by a trial judge in making the ruling.

Hearsay evidence must fulfill five requirements to be admissible under the residual exception. *See* 4 *Weinstein's Evidence*, ¶ 803(24)[01] at 803–242 to 803–243 (1978). We apply them to resolve the issue before us.

## 1. *Trustworthiness*

■ The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight. Evidence admissible under the residual exception must have "*equivalent* circumstantial guarantees of trustworthiness." Rules 803(24) and 804(b)(5) (emphasis added). Therefore, the guarantees to be considered in applying that exception are those that existed when the statement was made. In contrast, the probative value of an admission of a party-opponent, classified as non-hearsay by Rule 801(d)(2), is based on its inconsistency with the position asserted in court,[6] and that probative value does not depend on whether the party knew when making it that it would be against his inter-est in a later lawsuit.[7] Accordingly, in evaluating the circumstantial guarantees of trustworthiness with respect to Huff's statement, we may not consider its probative value as an admission of one who would be bringing the action if he had survived.

Turning to the circumstances we may properly consider for the present purpose, we note that Huff's statement was an unambiguous and explicit report of the events he had experienced two or three days earlier; it contained neither opinion nor speculation. He was not being interrogated, so there was no reason to give any explanation of how the accident happened unless he wanted to do so.[8] There was no reason for him to invent the story of the preexisting fire in the cab. The story was contrary to his pecuniary interest, *cf.* Rule 804(b)(3), whether or not he was aware of a possible claim against the manufacturer of the vehicle. A fire of unexplained cause on Huff's clothing would tend to indicate driver error and to fix the responsibility for the accident, with attendant adverse pecuniary consequences, on him.[9]

Plaintiff also argues that it is unlikely that Huff made the statement, because Mrs. Huff testified that he was not physically able to carry on a conversation.[10]

which he discussed, *viz.*, the present sense impression exception (Rule 803(1)), the excited utterance exception (Rule 803(2)), or the exception for statements of then existing mental, emotional, or physical condition (Rule 803(3)).

6. It is assumed in rationalizing admissibility that the admission may not possess circumstantial guarantees of trustworthiness. *See* Advisory Committee's Note to Rule 801(d)(2), 28 U.S.C.A. Fed.R.Evid. p. 530 (1975); McCormick, *supra*, at 629; Morgan, *Basic Problems of Evidence* 265 (1962).

7. *See* Strahorn, *A Reconsideration of the Hearsay Rule and Admissions*, 85 U.Pa.L.Rev. 484, 564, 570, 573 (1937); 4 Wigmore, *Evidence* § 1048 (J. Chadbourn ed. 1972). Both authorities, which are cited in the Advisory Committee's Note to Rule 801(d)(2), 28 U.S.C.A. Fed.R. Evid. p. 530 (1975), agree that an admission has probative value because it is a prior assertion by the party "inconsistent with the validity of the contention" made by him in court. Strahorn at 573; Wigmore § 1048. The admission

need not, of course, be against interest to be admissible, although it usually is.

8. Huff appears to have wanted to tell Myles and King how the accident happened:

Q. And was there a conversation in which [sic] you had with him and same that he had with you?
A. [by Myles]. It was mostly us listening to Mr. Huff.
Q. It was mostly what?
A. We listened to what he had to say.

9. Plaintiff's argument that Huff may have invented the story to explain to his employer how the accident happened is unpersuasive for this reason. Moreover, he was speaking to a friend and relative by marriage who was paying a sympathy call, not to his employer.

10. She testified that she could only see him ten minutes out of every hour, that when she saw him "he just came and went, [s]ometimes he would answer, sometimes he wouldn't," that he

Even if we were to consider facts bearing on the reliability of Myles' reporting of the incident in determining its admissibility, we would not be persuaded that it should have been excluded for this reason. Mrs. Huff was an interested witness and, moreover, was assisted by her counsel's leading questions in giving the testimony relied on. No reason is suggested why Myles, a friend and relative by marriage, would have manufactured the story. Although the trial judge did not address the residual exception and made no credibility finding, it appears from his remarks that he credited Myles' testimony.

■ In our view, however, the reliability of the witness' testimony that the hearsay statement was in fact made is not a factor to be considered in deciding its admissibility. We recognize that the Third Circuit said otherwise in the *Bailey* case, 581 F.2d at 349. But, as we have already noted, the circumstantial guarantees of trustworthiness necessary under the residual exception are to be "equivalent" to the guarantees that justify the specific exceptions. Those guarantees relate solely to the trustworthiness of the hearsay statement itself. 5 Wigmore, *supra*, §§ 1420, 1422. The specific exceptions to the hearsay rule are not justified by any circumstantial guarantee that the witness who reports the statement will do so accurately and truthfully. That witness can be cross-examined and his credibility thus tested in the same way as that of any other witness. It is the hearsay declarant, not the witness who reports the hearsay, who cannot be cross-examined. Therefore, although we do not think Myles' testimony would fail a reliability test, that test is not to be applied by the court but by the jury, as with any other witness.

■ For the same reason, the probability that the statement is true, as shown by corroborative evidence, is not, we think, a consideration relevant to its admissibility under the residual exception to the hearsay rule. *But see Bailey*, 581 F.2d at 349. Because the presence or absence of corroborative evidence is irrelevant in the case of a specific exception, it is irrelevant here, where the guarantees of trustworthiness must be equivalent to those supporting specific exceptions. Accordingly, in reaching our decision we do not rely upon the evidence to which defendant has pointed as corroborating Huff's story of the fire in the cab.[11]

■ All that we have said in explaining why the statement possesses circumstantial guarantees of trustworthiness presupposes that Huff was mentally competent to make a responsible statement. If he was not, the circumstantial guarantees of trustworthiness stated above disappear. Although it can be argued plausibly that the question of mental competence should be left to the jury,[12] we believe the judge

---

didn't seem to know what was going on, that he couldn't speak over two or three words at a time, and that she was never able to carry on a coherent conversation with him.

11. Richard Hicks, the first person to arrive at the scene of the accident, testified in a deposition that when he arrived at the scene the fire had engulfed the inside and the outside of the cab but was not burning the fuel spilled on the ground. This testimony lends some support to defendant's theory that the fuel was ignited by a preexisting fire in the cab. Hicks also testified that either the decedent's son or Mrs. Huff told Hicks that the decedent had talked of a preexisting fire in the cab. Although the latter testimony was not admissible in evidence, it could properly be considered by the court in determining the preliminary question of trustworthiness, *see* Rule 104(a), if corroborative

evidence were relevant on the question of admissibility.

12. In favor of leaving the question to the jury it can be argued as follows: A prerequisite to admissibility under any of the exceptions to the hearsay rule is that the declarant possess "the qualifications of a witness," 5 Wigmore, *supra*, § 1424. Under Indiana law, which is applicable in this diversity case, *see* Rule 601, Huff would not be disqualified because all persons over age ten except the insane are competent witnesses, Ind.Code Ann. §§ 34–1–14–4, 34–1–14–5 (Burns), and it can hardly be contended that Huff was insane. (Certain matters of privilege are also treated as matters of competence. *Id.* § 34–1–14–5.) Under Rule 601, all questions of a witness' reliability are left to the jury. By analogy, so should the reliability of a declarant whose statement is offered under an exception

should decide this question as a preliminary question of fact under Rule 104(a). It is true that if Huff were the witness the question would be left to the jury. *See* Rule 601; 1 *Weinstein's Evidence* ¶ 104[03]. But he is a hearsay declarant, not a witness, and the circumstantial guarantees of trustworthiness on which the admissibility of the hearsay depends all presuppose the mental capacity of a reasonable man in the position Huff was in. If that mental capacity was lacking, so are the guarantees of trustworthiness. Since it is the judge who must determine whether the requisite guarantees exist, he must determine whether Huff possessed the requisite capacity. The burden is on the proponent of the evidence to prove capacity by a preponderance of the evidence.

The case will be remanded to the district court for a determination of whether Huff possessed the mental capacity of a reasonable man at the time of his conversation with Myles and for a new trial if necessary. If the judge determines that Huff possessed the requisite mental capacity, it will follow from that determination and our decision that the evidence is admissible and a new trial will be necessary. If the judge decides otherwise, a new trial will be unnecessary, since the exclusion of the evidence will turn out to be correct and we find no other reversible error.

The present record may be inadequate on the issue of mental capacity. There are presumably other witnesses who saw Huff during the period when he made the statement: King, the other visitor, did not testify; nor did the doctors and nurses who treated Huff. Also, expert testimony on the question of Huff's mental condition may be appropriate. If the parties do not offer additional evidence, however, the de-termination will be made on the present record.

We proceed now to a brief explanation of why we believe the other requirements of the residual exception to the hearsay rule have been met. What is said hereinafter assumes that Huff possessed the requisite mental capacity.

### 2. Materiality

■ Rules 803(24) and 804(b)(5) require that the statement be offered as evidence of a material fact, which we take to be a requirement of relevance.[13] Defendant argues that the existence of a fire in the cab before the crash would be relevant to the issue of what caused the fuel to ignite after the crash, plaintiff having pleaded, offered proof, and argued that the location of the battery and battery mechanism as a result of a design error was a likely cause of ignition. Plaintiff responds that there were several possible sources of ignition. Assuming this to be true, the evidence was nevertheless relevant. The "fact that is of consequence" for purposes of the application of Rule 401 is that, as defendant contended, the fuel was ignited by a fire in the cab that was not due to a defect in the vehicle. If proved, that fact would be "of consequence to the determination of the action." The evidence in issue would tend "to make the existence of [that] fact . . . more probable or less probable than it would be without the evidence." Accordingly, the evidence is plainly relevant.

### 3. Probative Importance of the Evidence

■ To be admissible under the residual exception, the statement must be "more probative on the point for which it is of-

---

to the hearsay rule. Even though the jurors will not be able to observe the declarant as they would a witness, they will ordinarily have before them the evidence on which the judge would determine the qualification question if it were his responsibility to do so. In the extreme case in which the witness' incompetence is clear, the judge could exercise his balancing authority under Rule 403 to exclude the evidence.

**13.** The Advisory Committee, in drafting the Federal Rules of Evidence, avoided "the loosely used and ambiguous word 'material,' " using instead the phrase "of consequence in the determination of the action" in defining relevance. Advisory Committee's Note to Rule 401, 28 U.S.C.A. Fed.R.Evid. p. 85 (1975). In Congress' redraft of the residual exception clauses of Rules 803 and 804, the word "material" was included.

fered than any other evidence . . . [the defendant] can procure through reasonable efforts." Huff's statement satisfies this requirement. The other evidence is expert opinion and Hicks' circumstantial testimony about what he saw when he arrived at the scene after the crash. Only Huff was in the cab immediately before the crash and knew whether there was a fire in the cab at that time. Unless the hearsay is admitted, there will be no direct evidence on that question. Moreover, the unique probative quality that would lie in Huff's admission if he had survived to bring this action, *see* note 7 *supra,* is not lost when the action is brought by his widow for his wrongful death.

#### 4. *The Interests of Justice*

■ The hearsay statement is to be admitted only if doing so will best serve the general purposes of the Federal Rules of Evidence [14] and the interests of justice. As we have already said, the circumstantial guarantees of trustworthiness and the probative value of the statement are strong. The need for the only available direct evidence on the issue of whether there was a fire in the cab, which, if it existed, would have been a likely source of ignition of the fuel, is obvious. There is no reason to believe the jury will not be equipped to evaluate the evidence. Admission of the evidence will best serve the interests of justice by increasing the likelihood that the jury will ascertain the truth about the cause of the accident.

#### 5. *Notice*

Finally, the residual hearsay exception requires that the proponent of the hearsay statement notify his opponent of his intent to use the statement sufficiently in advance of the trial to give the opponent a fair opportunity to prepare to meet it. Plaintiff does not argue that defendant failed to comply with this notice provision, and the record reflects that defendant gave sufficient notice to plaintiff and the court.

■ For reasons that are apparent from our explanation of why we believe the evidence to be admissible under the residual exception if Huff possessed the requisite mental capacity, exclusion of the evidence, if erroneous, was so prejudicial as to require a new trial.

#### II.

#### *Excessiveness of Verdict*

■ Because of the possibility that a new trial will not be required, we must rule on defendant's argument that the $700,000 verdict was excessive. The governing legal principles are these: The standard for reviewing the district court's refusal to set aside the verdict on the ground of excessiveness is supplied by federal law even though Indiana law supplies the rule of decision in this diversity case. *Galard v. Johnson,* 504 F.2d 1198, 1200 n.1 (7th Cir. 1974). The district court's ruling is reviewable only for an abuse of discretion. *Id.* at 1199. *Grunenthal v. Long Island Rail Road,* 393 U.S. 156, 159–160, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). As stated in *Dagnello v. Long Island Rail Road,* 289 F.2d 797, 806 (2d Cir. 1961), in a passage quoted in part with approval in *Galard,* 504 F.2d at 1200, we are

not to decide whether we would have set aside the verdict if we were presiding at trial, but whether the amount is so high that it would be a denial of justice to permit it to stand. We must give the benefit of every doubt to the judgment of the trial court; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law.

This passage was also quoted, apparently with approval, in the *Grunenthal* case, 393

---

**14.** The general purposes of the Federal Rules of Evidence are set forth in Rule 102 as follows:

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

U.S. at 159, 89 S.Ct. 331, and supplemented by the following footnote:

> The standard has been variously phrased: "Common phrases are such as: 'grossly excessive,' 'inordinate,' 'shocking to the judicial conscience,' 'outrageously excessive,' 'so large as to shock the conscience of the court,' 'monstrous,' and many others." *Dagnello v. Long Island Rail Road Co., supra,* at 802.

393 U.S. at 159 n.4, 89 S.Ct. at 333 n.4. *See also Galard v. Johnson,* 504 F.2d at 1199–1200. In applying the *Dagnello* standard, we are required to make a "detailed appraisal of the evidence bearing on damages." *Grunenthal v. Long Island Rail Road,* 393 U.S. at 159, 89 S.Ct. at 333.

Huff was 51 years old when he died and had a life expectancy of 23 years and a worklife expectancy of 14.1 years. His annual earnings were between $9,800 and $9,900. He was also entitled to fringe benefits. Plaintiff's expert economist calculated the present value of Huff's lost earnings at $267,907 and fringe benefits at $60,132; subtracted the present value of the personal maintenance of Huff if he had lived out his life expectancy, $127,935; added the present value of household services over that period (using $3,000 for the first year and increasing the amount 6.84 percent annually); and arrived at a present value of Mrs. Huff's economic loss of $285,600.

The evidence on intangible elements of damages was as follows: The Huffs were high school sweethearts. He was the only man she had ever dated. They had been married for 30 years and had raised four children. The family had moved only once during the marriage. Huff had changed jobs only once. The Huffs loved each other, and she relied on him for advice in making all decisions of consequence.

In her original complaint plaintiff prayed for damages in the amount of $200,000. The complaint as ultimately amended asked for $575,000. In his closing argument, Mrs. Huff's counsel asked the jury to award $285,600 for economic loss, in accordance with the expert economist's calculation,

$115,000 for the loss of decedent's counseling and guidance, and $276,000 for the loss of love and affection, for a total of $676,600. The jury awarded $700,000.

■ Although the economist's estimate that Mrs. Huff's economic loss amounted to $285,600 strikes us as expansive, defendant has not challenged that estimate, concentrating its attack instead on the $414,400 awarded for loss of the decedent's counseling and guidance and love and affection.[15] Nevertheless, defendant points to the disparity between Huff's earnings and the total award, as well as between the economic loss figure and the balance of the award. While at first blush these disparities may seem incongruous, it is apparent upon a moment's reflection that Mrs. Huff's loss of the non-economic intangibles should not be valued lower than a similar loss to one in more fortunate economic circumstances. Disparity between economic loss and other elements of damages is therefore not a basis for challenging the latter.

Defendant points to the cases on the issue of excessiveness of an award for wrongful death listed in 46 A.L.R.3d 680 and 733 (1972) and 47 A.L.R.3d 909 (1973) and provides us with a compendium of 1975–1978 cases on that issue. In none of them was the court even required to rule on an award comparable to the one at bar, and in some of them, all state cases, much lower awards were held to be excessive. Defendant also cites *Palace Bar, Inc. v. Fearnot,* 376 N.E.2d 1159 (Ind.App.1978), in which an award of $93,000 for the wrongful death of a 52-year-old man was held excessive, but, as noted above, we are not to apply state law in deciding this issue. Plaintiff does not cite any case in which a comparable award was ruled upon.

■ We must acknowledge that we would be more comfortable in deciding the amorphous question before us as we do if other courts had approved comparable awards. Also, we would not have awarded $700,000 if we had been the jury, and we

---

15. These intangible elements of damages are concededly recoverable under Indiana law.

might well have set aside the verdict or ordered a remittitur had we been presiding at the trial. This evaluation by us, however, does not support a reversal. *Dagnello v. Long Island Rail Road*, 289 F.2d at 806. Even though we think the verdict overgenerous, we may not disturb it unless in our judgment it can aptly be described as "grossly excessive" or "monstrous" or with similar pejorative adjectival terms. *Galard v. Johnson*, 504 F.2d at 1199–1200; *Grunenthal v. Long Island Rail Road*, 393 U.S. at 159 n.4, 89 S.Ct. 331. We cannot so describe an award of $414,000 for loss of a husband's love and affection and counsel and guidance in the circumstances presented by this case. Therefore, although we are left with the uncomfortable feeling that the verdict is too high, we think we would be exceeding the limits of our authority if we were to disturb it.

### III.

#### *Punitive Damages*

In a cross-appeal plaintiff conditionally urges error in the district court's holding that Indiana's wrongful death statute, Ind. Code Ann. § 34–1–1–2 (Burns), does not authorize punitive damages, and asks for a ruling on that contention if, and only if, a new trial is ordered pursuant to defendant's appeal. Since our decision will require a new trial on the condition stated in Part I, above, we reach the punitive damages issue.

Plaintiff contends that in 1965 the Indiana legislature authorized awards of punitive damages in wrongful death actions by amending § 34–1–1–2 to read, in relevant part, as follows:

> When the death of one is caused by the wrongful act or omission of another . . . the damages shall be in such an amount as may be determined by the court or jury, *including but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission.*

1965 Indiana Acts, ch. 174 § 1 (amendatory language italicized). No Indiana court decisions have determined whether this amend-

ment authorizes punitive damages. As plaintiff acknowledges, prior to the amendment punitive damages were not recoverable because the sole purpose of the statute was to compensate wrongful death claimants for pecuniary loss occasioned by the wrongful death. *See, e. g., Lindley v. Sink*, 218 Ind. 1, 14–15, 30 N.E.2d 456, 461 (1940).

"Punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' " *International Brotherhood of Electrical Workers v. Foust*, —— U.S. ——, ——, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). An authorization of punitive damages would constitute a major change in both the effect and the purpose of § 34–1–1–2. We cannot accept the argument that the Indiana legislature would so obliquely adopt such a significant change. Rather, we believe the legislature used the phrase "including, but not limited to" to make clear that, by including the list of recoverable expenses that follows, it did not intend to exclude the other factors a jury may consider in assessing *compensatory* damages, *e. g.*, loss of care, love, and affection, and of training and guidance for children. *See American Carloading Corp. v. Gary Trust & Savings Bank*, 216 Ind. 649, 660, 25 N.E.2d 777, 782 (1940). We conclude that § 34–1–1–2 still does not authorize punitive damages.

Although no Indiana court has spoken directly on this issue in a published opinion since 1965, the Indiana Supreme Court, citing pre-1965 cases with approval, has stated that the purpose of the present statute is still "to create a cause of action to provide a means by which those who have sustained a loss by reason of the death may be compensated." *Estate of Pickens v. Pickens, supra*, 255 Ind. at 126, 263 N.E.2d at 155; *see also Bocek v. Inter-Insurance Exchange of the Chicago Motor Club*, 369 N.E.2d 1093, 1096 (Ind.App.1977). Our conclusion is consistent with this statement of the statutory purpose.

Plaintiff alternatively contends that if § 34–1–1–2 does not allow punitive damages it violates the equal protection clauses of the United States and Indiana Constitutions by discriminating against wrongful death claimants and in favor of other personal injury and property damage plaintiffs, who are permitted to recover punitive damages. This contention is without merit. The legislative classification, involving neither race nor 'certain other immutable human attributes," does not constitute invidious discrimination. *See Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). Nor does it affect fundamental rights. *See id.* at 1749 n.12. Therefore § 34–1–1–2 "is entitled to a presumption of validity and will be upheld 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legislative purposes that we can only conclude that the legislature's actions were irrational.' " *Id.* at 1746 (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979)). Plaintiff has not persuaded us that the adoption of § 34–1–1–2 without a provision authorizing awards of punitive damages was irrational. *See Vance v. Bradley*, 440 U.S. 93, 110–111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). We agree with the First Circuit's holding that such a provision does not violate the Fourteenth Amendment. *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1148–1149 n.2 (1974).

The equal protection clause of the Indiana Constitution is coextensive with the federal equal protection clause. *Haas v. South Bend Community School Corp.*, 259 Ind. 515, 526, 289 N.E.2d 495, 501 (1972), and therefore is not offended by the statute.

The judgment is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.[16] Circuit Rule 18 shall not apply. Each side shall bear its own costs.

Vacated And Remanded With Directions.

---

16. Other issues raised by defendant that are likely to arise on retrial but do not meet the standards for publication stated in Circuit Rule 35 are decided in a contemporaneously filed unpublished order.