**ESTATE OF Alice L. SWEENEY**

v.

**Edward O. CHARPENTIER et al.**

No. 94–390–Appeal.

Supreme Court of Rhode Island.

May 14, 1996.

William Filippo, Patricia Breslin, Providence, for Plaintiff.

Robert Corrente, Providence, for Defendants.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendants, Edward O. and Mary Frances Charpentier (Charpentiers), from a judgment entered upon a jury verdict in favor of the plaintiff, Alice L. Sweeney, in this breach-of-contract case. On appeal, the defendants argued that the trial justice erred (1) when he denied their motion *in limine* to exclude the plaintiff's hearsay statements and subsequently allowed the statements to be admitted at trial, (2) when he instructed the jury on damages and the impossibility of performance, (3) when he denied the defendants' motion for a directed verdict, and (4) when he denied the defendants' motion for a new trial. For the reasons recited below, we sustain the appeal and remand the matter to the Superior Court for a new trial. The facts relevant to the issues raised in this appeal are summarized below.

### Facts and Procedural History

In July 1986, plaintiff suffered a major stroke and was hospitalized for approximately three weeks. Following her hospitalization, plaintiff resided with her daughter and her son-in-law, the Charpentiers, and her two grandsons at the Charpentier home in Warwick for a four-to-six week recuperative period. In the fall of 1986, the parties agreed that plaintiff would live with the Charpentiers on a permanent basis and decided to seek a larger house to accommodate the entire family. Thereafter, the Charpentiers sold their home in Warwick, plaintiff sold her home in Providence, and in February 1987, the parties purchased a home in Cumberland at a purchase price of $205,000. The plaintiff contributed $100,000 toward the purchase price, and the Charpentiers contributed $30,000 and assumed a $75,000 mortgage on the home. The deed to the property was recorded in defendants' names only; plaintiff's name was not placed on the deed nor was plaintiff's contribution of almost one half the purchase price memorialized by any document.

In February 1987, the parties moved into the Cumberland house and lived together harmoniously through the spring of that year. At the beginning of the summer of 1987, plaintiff expressed to her daughter, Mrs. Charpentier, her concerns that should something happen to her daughter, plaintiff's son-in-law would not permit her to remain in the family home. In July 1987, at plaintiff's insistence, Mrs. Charpentier prepared a document that stated that plaintiff had contributed $100,000 toward the purchase of the house in Cumberland, "with the stipulation that [plaintiff] has the right to live at the above mentioned premises for her lifetime." The document, which was signed by the Charpentiers, further stated that if the home were to be sold, plaintiff's $100,000 would be returned to her. The plaintiff left the house in December 1987, returned for a week in February, and then moved out permanently.

On March 3, 1989, plaintiff filed a complaint in Superior Court in which she alleged that defendants had "intentionally behaved in a manner so as to make [her] occupancy of said premises unbearable" and sought the return of the $100,000 that she had contributed toward the purchase of the property.

During a jury trial on March 23, 24, and 25, 1994, the trial justice denied defendants' motion *in limine* to exclude certain hearsay statements made by plaintiff. At the close of plaintiff's case, the trial justice denied defendants' motion for a directed verdict, and on

March 28, 1994, the jury returned a verdict for plaintiff in the amount of $75,000.

On May 12, 1994, the trial justice denied defendants' motion for a new trial, and on May 16, 1994, defendants filed the instant appeal. The plaintiff died on November 18, 1994, and on August 17, 1995, this Court granted the motion to substitute her estate as plaintiff in this case.

## Admission of Plaintiff's Hearsay Statements

The plaintiff's physical and mental condition deteriorated such that she was unable to testify at trial in 1994. Although plaintiff had been deposed in May 1989, her counsel acknowledged that "some of the statements that [plaintiff] made during the deposition are indicative of her being a little confused and disoriented." For example, plaintiff testified that Mr. Charpentier told her on several occasions during the time they resided together that the home belonged to the Charpentiers and not to plaintiff and stated that Mr. Charpentier made her feel unwelcome and uncomfortable in the family home. At the same time, however, plaintiff characterized the disagreements between Mr. Charpentier and herself as "petty." Similarly, plaintiff testified that Mrs. Charpentier told plaintiff that she hated her, yet plaintiff further stated that she and her daughter "never had any disagreement and never had words." Despite these inconsistencies, plaintiff introduced the deposition as evidence, and the deposition was read to the jury at trial.

Prior to trial, plaintiff gave notice pursuant to Rule 804(b)(5) of the Rhode Island Rules of Evidence, that she also intended to present statements that she had made to her former attorney, Charles Anderson (Anderson), and to her friend Maureen Bondurak (Bondurak), describing the manner in which the Charpentiers treated plaintiff during the time the parties resided together. The defendants moved in limine to exclude these hearsay statements, but the trial justice found that the statements qualified as "double exception[s] to the hearsay rule" and were thus admissible as a residual exception of Rule 804(b)(5) and as a "then existing

mental, emotional, or physical condition" under Rule 803(3). Consequently, the trial justice denied defendants' motion and admitted the statements.

Anderson was unable to testify at trial, and his December 1993 deposition was read to the jury. Anderson testified that plaintiff contacted him in December 1987 and expressed her concern about her $100,000 investment and the fact that the transaction had not been memorialized by any documents. He further related that plaintiff told him she was unhappy with her living situation, that Mr. Charpentier had said that "the house was not hers, [and that] she had no say in anything to do with the house," that she was not allowed to eat meals with other family members, and that no one would talk to her." Anderson also testified that Mrs. Charpentier told him that she had hated her mother since she was eight years old and that plaintiff wanted to make certain that Mr. Charpentier was not a beneficiary in her will. In November 1987, Anderson drafted a will that eliminated Mr. Charpentier as a beneficiary, and in November 1988 and December 1989, plaintiff executed new wills that excluded her daughter and named her grandchildren and Bondurak as the primary beneficiaries. In 1991, plaintiff's final will was executed, excluding her grandchildren and naming Bondurak as the primary beneficiary.

Bondurak testified that in March 1988, plaintiff told her that "things were miserable" at the Charpentier house, that Mr. Charpentier would not allow plaintiff to plant flowers, and that Mrs. Charpentier had told plaintiff that she hated her. Bondurak further testified that she continued to see plaintiff on a regular basis after plaintiff had left the Charpentier home. In July 1991, Bondurak learned from plaintiff that she was a beneficiary in plaintiff's will, and in March 1993, Bondurak became plaintiff's guardian.

On appeal, defendants argued that the denial of their motion in limine and the subsequent admission of plaintiff's hearsay statements to Bondurak and Anderson constituted reversible error and contended that the requirements for admissibility under Rule 804(b)(5) were not satisfied and that Rule 803(3) was inapplicable in the instant case.

## Standard of Review

■ A trial court has considerable discretion in applying the residual exception to the hearsay rule. *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir.1979) (citing *United States v. Friedman*, 593 F.2d 109, 118 (9th Cir.1979)). As a consequence, an appellate court will not disturb a trial justice's ruling on admissibility under the residual hearsay exceptions unless the trial court was clearly erroneous in reaching its conclusion on admissibility and the error was prejudicial. *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1358 (11th Cir.1986); *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir.1982).

## Rule 804(b)(5)—Other Hearsay Exceptions

■ Under Rule 804(b)(5), evidence may be admitted as a residual exception to the hearsay rule if the declarant is unavailable as a witness and if the evidence is determined to be

"[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide

the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."

Our determination of whether the residual exception applies in this case focuses on two factors—the trustworthiness and the probative value of the statements at issue. "[I]n each case where Rule 804(b)(5) is invoked, the court is essentially creating a new exception to the hearsay rule. If the hearsay rule is to retain any life, a demand for the creation of a new exception counsels caution and should be granted only where *special 'trustworthiness'* is shown."[1] (Emphasis added.) *Wolfson v. Mutual Life Insurance Co.*, 455 F.Supp. 82, 88 (M.D.Pa.), *aff'd*, 588 F.2d 825 (3rd Cir.1978). *See generally* Thomas Black, *Federal Rules of Evidence 803(24) & 804(b)(5)—The Residual Exceptions—An Overview*, 25 Hous. L.Rev. 13, 24 (1988).

■ Our review of the record in the instant case leads us to conclude that the hearsay statements in question lacked "equivalent circumstantial guarantees of trustworthiness" for two reasons. First, plaintiff's medical records in May 1988 described her as "incoherent," "confused," and "disoriented" and concluded that "it is likely that [plaintiff] has had cognitive deficits for some time." Because plaintiff's hearsay statements were made to Bondurak in March of 1988, the inherent reliability of those statements can be questioned. Second, the hearsay statements at issue were made to plaintiff's former attorney in the instant litigation and to a major beneficiary of her will. In respect to the statements made to Attorney Anderson, the Supreme Court Rules of Professional

1. In *Robinson v. Shapiro*, 646 F.2d 734, 743 n. 7 (2d Cir.1981), the court noted a "disagreement among the circuits as to the scope of a court's inquiry in determining 'circumstantial guarantees of trustworthiness.'" For example, in *United States v. Bailey*, 581 F.2d 341, 349 (3d Cir. 1978), the court held that "the trustworthiness of a statement should be analyzed by evaluating * * * the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely. Further, consideration should be given to factors bearing on the *reliability of the reporting of the hearsay by the witness.*" (Emphasis added.) On the other hand, *Huff v. White Motor Corp.*, 609 F.2d 286, 293 (7th Cir.1979), rejected the approach of the Third Circuit and held that "the reliability of the witness' testimony that the hearsay statement was in fact made is not a factor to be considered in deciding its admissibility." The court reasoned that the "circumstantial guarantees of trustworthiness necessary under the residual exception are to be 'equivalent' to the guarantees that justify the specific exceptions" and "[t]hose guarantees relate solely to the trustworthiness of the *hearsay statement itself.*" (Emphasis added.) *Id.* (citing 5 *Wigmore on Evidence*, §§ 1420, 1422 Chadbourn rev.1974)).

Conduct acknowledge the inherent tension between the roles of advocate and that of witness. *See* Rule of Prof. Conduct 3.7(a) ("lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except under certain specified conditions). The statements made to Bondurak, a beneficiary under plaintiff's will, generate suspicion because of Bondurak's potential bias as a hearsay reporter.

Therefore, insufficient indicia of reliability existed to support a determination that the hearsay testimony of Bondurak and Anderson embodied "equivalent circumstantial guarantees of trustworthiness," and, hence, we conclude that the requirement of trustworthiness under Rule 804(b)(5) was not satisfied. Furthermore, we are not persuaded that the hearsay statements were more probative on any material points than was plaintiff's own deposition testimony, which constituted the most probative evidence available. The hearsay testimony served primarily to bolster plaintiff's position and compensate for the inconsistencies in her deposition. As a result, the requirement that the hearsay evidence be the most probative evidence reasonably available on the point for which it is offered was not satisfied by admitting the statements.

### Rule 803(3)

■ As a further basis for his ruling, the trial justice found that the hearsay statements were admissible under Rule 803(3) as a "then existing mental, emotional, or physical condition." On appeal, defendants argued that Rule 803(3) was inapplicable because the hearsay statements did not relate to any "then existing" condition on plaintiff's part.

Rule 803(3) contains an express proviso that the rule does not apply to "a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." In the instant case, the plaintiff conceded that the hearsay statements "go to why [the plaintiff] left the house" and "tend to prove [the plaintiff] didn't leave [the Charpentier home] voluntarily." We therefore conclude that the hearsay statements at issue fall clearly outside the Rule 803(3) exception because they constitute statements of "memory or belief" tending to prove the fact that the plaintiff left the Charpentier home because their treatment of her made living in the home "unbearable." Consequently, the trial justice erred in admitting the plaintiff's hearsay statements under Rule 803(3).

In conclusion, therefore, we hold that the trial justice erred when he admitted the plaintiff's hearsay statements. Because we sustain the defendants' appeal on this issue, we do not reach additional ones raised by the defendants. Consequently, the judgment of the Superior Court is vacated and the case is remanded to that court for a new trial.