**STATE**

v.

**Hervey MOMPLAISIR.**

**No. 2000–36–C.A.**

Supreme Court of Rhode Island.

Feb. 12, 2003.

---

Aaron Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on December 3, 2002, on appeal by the defendant, Hervey Momplaisir (Momplaisir or defendant), from a judgment of conviction for violations of the Uniformed Controlled Substances Act. The defendant challenges his convictions on three grounds. We affirm.

On February 23, 1998, Momplaisir and codefendant Jamal Brooks (Brooks or codefendant) were charged with eight felony crimes; four drug counts and four weapons-related offenses. Specifically, defendant was charged with possession of one ounce to one kilogram of cocaine, possession of cocaine with intent to deliver, conspiracy to possess cocaine with intent to deliver, and conspiracy to possess one ounce to one kilogram of cocaine. The trial justice granted defendant's motion for

judgments of acquittal on the four firearms charges and the jury returned verdicts of guilty on the four remaining narcotics counts.

At trial, the state presented the testimony of several Providence police detectives. Detective Angelo A'Vant (Det. A'Vant) testified that on February 19, 1998, he and his partner, Detective Fabio Zuena (Det. Zuena) were conducting an undercover investigation in the Olneyville section of Providence when a man, later identified as Jose Perales (Perales), offered to sell them crack cocaine. On February 23, at approximately eight o'clock in the evening, Det. A'Vant made arrangements with Perales to meet at a specific location in Olneyville to purchase one ounce of crack cocaine. Detective A'Vant then notified other Providence police detectives, who established positions in the vicinity. Detective A'Vant stated that at approximately 8:30 p.m., Perales arrived in a green Pathfinder automobile [1] accompanied by two other men. According to Det. A'Vant, Perales entered the undercover vehicle and said that "[his] boys [were] across the street" in the Pathfinder. However, before the transaction was completed, Perales discovered that the undercover detectives were wearing bulletproof vests. Perales quickly exited the vehicle and alerted the two men in the Pathfinder that "[t]hey're cops." Perales immediately was apprehended along with the two subjects in the Pathfinder, later identified as Brooks, the driver, and defendant, the front-seat passenger. As defendant was being apprehended, both Det. A'Vant and Det. Zuena testified, they observed him attempting to hide a clear plastic bag, subsequently found to contain 30.5 grams of crack cocaine inside his trousers. After he was apprehended, defendant intentionally concealed his true identity from the police by falsely identifying himself as Gerall Francois. However, Detective Joseph Calonduono (Det. Calonduono), who had been engaged in a separate drug investigation in which defendant also was implicated, correctly identified him as Hervey Momplaisir. According to Det. Calonduono, an undercover purchase of narcotics from defendant had been made the previous day. This testimony was allowed into evidence over defendant's objection.

Detective Robert Enright (Det. Enright) testified that after Brooks was arrested he consented to the search of his apartment at 15 Hawkins Street in Providence. Additionally, a search warrant was obtained for defendant's residence at 27 Hawkins Street. The search of Brooks's apartment produced two handguns, two scales, a 100–gram weight, a steak knife with cocaine residue and a box of .25–caliber ammunition. Detective Daniel Gannon, testifying as an expert witness, said that the guns and ammunition, the two scales, the 100 gram weight,[2] and the knife found at this address are commonly used in connection with drug dealing. Detective Patricia Cornell testified that defendant's fingerprints were identified on the scale and on the .25–caliber ammunition seized from Brooks's apartment. In addition, the search of defendant's residence at 27 Hawkins Street produced contraband, including ammunition for 9mm, .38–caliber, and .25–caliber firearms, a digital scale, a drug ledger, codefendant Brooks's driver's license and a clear plastic baggy containing 4.9 grams of cocaine.

Significantly, during the search of his apartment, Brooks made several incriminating statements to the police. Detective Enright testified that Brooks initially admitted that a book bag belonged to him,

---

1. The Pathfinder was registered to codefendant Brooks.

2. In his testimony, he specified that the 100–gram weight is used to calibrate the scales.

but when firearms and other contraband were discovered inside the book bag, Brooks declared, "That is not my bag, then." This testimony was allowed into evidence over the objection of defense counsel. Further, after a digital scale was discovered in his bedroom, Det. Enright testified, again over objection, that Brooks became "very upset" and exclaimed "I told Hervey [Momplaisir] to get all of that stuff out of there * * * I told him he could keep his money here, but I told him I don't want any drugs in the house." Brooks's statements to Det. Enright were challenged on hearsay grounds but were admitted by the trial justice under Rule 803(1) and (2) of the Rhode Island Rules of Evidence, as present sense impressions and excited utterances.

In his defense, defendant presented the testimony of Perales.[3] Although Perales voluntarily had given a statement to Det. A'Vant that implicated Momplaisir in the charged crimes, his trial testimony was markedly different. Perales testified that defendant was not involved in the aborted drug deal and had no knowledge that Perales was attempting to negotiate a sale of crack cocaine to the undercover officers. Further, Perales denied that the cocaine was in the Pathfinder and stated that before he entered the undercover vehicle, he secreted the drugs in a trash can. Perales denied telling the detectives that his "boys had the drugs across the street," and that his declaration that "They're cops" was not directed at the individuals in the Pathfinder. In his closing argument to the jury, defense counsel pointed to Perales's inculpatory testimony and accused the officers of lying about witnessing defendant stuffing drugs inside his pants.

### The Admission of Hearsay Statements of Codefendant Brooks

On appeal before this Court, defendant argues that Brooks's statements to Det. Enright made during the search of his apartment were inadmissible hearsay and their admission into evidence amounted to reversible error. We note that before ruling on the admissibility of this testimony the trial justice ordered a voir dire of the witness. The record discloses that during the search of Brooks's apartment, Det. Enright made firsthand observations of his behavior as Brooks made these statements. However, defendant argues that neither Brooks's statement about the book bag nor his declaration about instructing the defendant that he could not store drugs in his apartment qualified as an excited utterance or a present sense impression.

Rule 803(1) provides that a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter," and Rule 803(2) describes an excited utterance as a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." These hearsay exceptions, formerly admissible as *res gestae*, are closely related concepts with a temporal distinction between a present sense impression and an excited utterance. *See State v. Dame*, 488 A.2d 418, 424 (R.I.1985); *State v. Vaccaro*, 111 R.I. 59, 62 n. 1, 298 A.2d 788, 790 n. 1 (1973). These statements are not excluded by the hearsay rule notwithstanding the availability of the witness. The state concedes, and we agree, that neither statement qualifies as an excited

---

3. On April 14, 1998, less than two months after the instant arrest, Perales pled *nolo contendere* to drug charges in consideration of a thirty-year sentence (six to serve, the balance suspended for a twenty-four-year probationary period).

utterance or a present sense impression. Although following his arrest and during the search of his dwelling Brooks may have appeared to be nervous and excited, we are unable to discern any startling event that would result in a statement, contemporaneous or otherwise, that was free of conscious fabrication. Indeed, the circumstances under which Brooks made these statements to Det. Enright clearly demonstrate that they were the product of deliberation and reflection. Brooks's exculpatory declarations to the police were intended to distance himself from the contraband that was seized from his home.

◼ The reliability of the excited utterance exception to the hearsay rule traditionally has been grounded on the belief that at the time the declarant makes the statement, he or she is still under the strain of the startling event that triggered the statement, with little or no opportunity to deliberate or prevaricate. Although the "statement need not be strictly contemporaneous with the startling event to qualify as spontaneous," it nonetheless must be made while the declarant was still laboring under the stress of the event. *State v. Mendez*, 788 A.2d 1145, 1147 (R.I.2002) (per curiam). When considered in light of the facts and circumstances under which these statements were made, they simply cannot qualify as excited utterances.

◼ Likewise, a present sense impression is a statement that is made simultaneously or with only a slight lapse of time from the event about which the statement relates. A declaration about an event made while the declarant was observing the event is a present sense impression. Because the statement is made contemporaneously with the event, there is no time for reflection or deception and no question about the accuracy of the declarant's memory. *See* Rule 803 Advisory Committee's Note (exceptions (1) and (2)). The state-

ment usually describes or explains the event that the declarant is observing or experiencing. An intentional attempt to explain away suspicious circumstances does not qualify as a present sense impression. Here, it is obvious that Brooks witnessed the police search his dwelling and rummage through his belongings; he thus had more than ample time to decide what to say in the event that incriminating evidence was discovered. Therefore, we conclude that neither statement qualifies as an exception to the hearsay rule.

The state argues that although these statements were inadmissible hearsay, their erroneous admission into evidence was harmless error that could not have affected the verdicts in this case. Because defendant was acquitted of the weapons offenses, the state suggests that Brooks's declaration that the book bag was not his was merely cumulative evidence that had no effect on the outcome. The state relies on *In re Andrey G.*, 796 A.2d 452 (R.I. 2002) (per curiam), in which this Court recognized that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when [defendant's] guilt is sufficiently established by proper evidence." *Id.* at 457 (quoting *State v. Micheli*, 656 A.2d 980, 982 (R.I. 1995)). In particular, the state suggests that defendant was convicted of the drug counts based upon the cocaine and drug paraphernalia found in *defendant's* residence irrespective of Brooks's out-of-court declarations. Further, the state argues that the contraband discovered in Brooks's residence was cumulative proof that defendant possessed cocaine with the intent to deliver and conspired with Brooks to commit that offense. The state also suggests that in light of the evidence that defendant's fingerprints were actually identified on the digital scale discovered in Brooks's closet, Brooks's statement to Det. Enright

that the scale belonged to defendant also was cumulative evidence.

Although we are satisfied that this testimony was inadmissible hearsay evidence, we are not persuaded that its admission amounted to reversible error. In light of the overwhelming evidence of defendant's guilt, including the testimony that more than an ounce of crack cocaine was discovered on his person and an additional amount was found in his bedroom, we are satisfied that the admission of Brooks's out-of-court statements was harmless error. We note that Brooks's remarks were wholly unrelated to the charges that emanated from the undercover operation in Olneyville. The defendant was convicted of these offenses based upon the seizure of more than an ounce of cocaine from his person while acting in concert with Perales and Brooks. Further, 4.9 grams of cocaine were found in defendant's bedroom closet along with a drug ledger and *Brooks's* driver's license, while *defendant's* driver's license was found in Brooks's apartment and his fingerprints were discovered on the scale seized from Brooks's closet. This evidence, independent of Brooks's hearsay statements, was abundant proof of defendant's participation in this criminal endeavor. As noted, defendant was acquitted of the weapons charges; thus, Brooks's statement denying that the book bag belonged to him could not have affected the result in this case. The record discloses that defendant was convicted of the counts related to the co-caine seized from his person and his home based upon evidence unrelated to the weapons found in the book bag and the scale seized from Brooks's closet. Accordingly, we are satisfied that the erroneous introduction of Brooks's out-of-court statements was harmless error.

### The Refusal to Admit Perales's Medical Records

Jose Perales testified for the defense and admitted that the cocaine was his alone and that before his encounter with the police, he had deposited the drugs in a trash can. When confronted on cross-examination with a statement he had previously given to the police in which he implicated defendant, Perales insisted that the statement was not true and that he had been beaten by the police and coerced into signing it. He testified that when he initially refused to sign the allegedly false statement, Det. A'Vant hit him in the back of the head six times with a flashlight. The defendant then sought to introduce into evidence as a full exhibit a four-page medical report, dated March 18, 1998, from the Rhode Island Department of Corrections (DOC) that contained the DOC physician's notation that, "[f]our weeks ago [Perales] was hit with a club." Defense counsel argued that this exhibit was admissible pursuant to Rule 803(4) and (6), the medical diagnosis or treatment exception and the business records exception to the hearsay rule.[4] The state objected on the ground that the physician's

---

4. Rule 803(6) of the Rhode Island Rules of Evidence, *"Records of Regularly Conducted Activity,"* provides in pertinent part that the following are not excluded by the hearsay rule notwithstanding the availability of the declarant:

"A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

notation was highly suspect because it indicated that Perales was beaten, not with a flashlight, as Perales testified at trial, but with a club.[5] In line with the prosecution's objection, the trial justice also had serious reservations about the reliability and trustworthiness of the DOC physician's notation on March 18, 1998. He found that the report was barely legible and that the length of time between Perales's statement (February 24, 1998) and the DOC physician's notation (March 18, 1998) rendered the report untrustworthy for the purpose for which it was proffered. The trial justice concluded that Perales could have suffered the injuries at "any time between February 23 and March 18" and therefore, standing alone, the statement, "without any more corroboration or causality attached to it by any competent medical physician * * * [is] too speculative to allow it to go to the jury." The trial justice declined to permit the jury to engage in speculation about how or when the witness was injured or whether it was with a flashlight or a club. Therefore, he refused to admit the DOC report as a full exhibit.

█ The admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Andreozzi,* 798 A.2d 372, 374–75 (R.I.2002) (per curiam).

Rule 803(4), *"Statements for Purposes of Medical Diagnosis or Treatment,"* allows for the admission into evidence of statements,

"made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, but not including statements made to a physician consulted solely for the purposes of preparing for litigation or obtaining testimony for trial."

█ In the context of this case, Perales's statement to DOC medical personnel that he was struck by a club a few weeks previous to the examination qualifies as a statement made for purposes of medical diagnosis or treatment pursuant to Rule 803(4). The admissibility of this evidence "hinge[s] on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of [the patient's] ailment." *In re Jessica C.,* 690 A.2d 1357, 1363 (R.I.1997) (quoting *State v. Ucero,* 450 A.2d 809, 815 (R.I. 1982)). The test is whether the statement is reasonably pertinent to the formulation of a medical diagnosis or treatment. *Id.* at 1364. According to Perales, the purpose of the visit to the DOC medical facility was for examination and treatment of an alleged head injury; the statement was directly related to that physical complaint and qualifies as an exception to the hearsay rule pursuant to Rule 803(4). We are further satisfied that the DOC record is a record maintained by DOC in connection with its regularly conducted activity of providing medical diagnosis and care for its inmate population and therefore would qualify, pursuant to Rule 803(6) as a business record exception to the hearsay rule. That does not end the inquiry, however. Notwithstanding that this evidence may fall within a recognized exception to the hearsay rule and may otherwise be relevant, its admissibility is nonetheless addressed to the sound discretion of the trial justice and may be excluded if its introduction will lead to speculation and confusion

---

**5.** At trial, Perales mentioned that, "It seemed like a flashlight[.] * * * [I]t felt cold. That is why I say it was a flashlight. It felt like metal."

of the issues. Rule 403 of the Rhode Island Rules of Evidence provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

▮ In deciding whether to admit testimony or documentary evidence of questionable probative value trial judges are required to conduct an evidentiary balancing test and are vested with broad discretion to exclude otherwise relevant evidence that may lead to speculation or confusion. In refusing to admit the DOC medical report, the trial justice had the benefit of Perales's in-court testimony that he signed a confession that implicated defendant after being struck several times with a flashlight or a hard, cold object. The proffered exhibit, a medical report prepared several weeks later, lacked sufficient detail to avoid speculation on the part of the jury. The statement sought to be introduced did not refer to Perales's arrest, his interrogation, or the fact that he was beaten by the police; it was barely legible and described the weapon as a club, not a flashlight. Further, the record discloses that there were photographs of Brooks taken on February 23, 1998, depicting his face without any apparent facial injuries. Thus, the introduction of the medical record would have opened the door to the introduction of these photographs, remote and collateral evidence tending to confuse the jury. Therefore, the speculative nature of the report and the likelihood of additional ancillary evidence tending to distract the fact-finder was an appropriate ground for exclusion of the medical report. We discern no error on the part of the trial justice in refusing to admit the report into evidence.

## The Admission of Evidence of Defendant's Prior Police Contacts

▮ The defendant assigns as error the admission of testimony by Det. Calonduono surrounding the circumstances under which his true identity was uncovered. It is undisputed that upon his arrest defendant falsely identified himself as Gerall Francois, and it was Det. Calonduono who, in connection with a separate two-month narcotic investigation, exposed his chicanery and revealed his true appellation. Upon his arrival at police headquarters, Det. Calonduono informed the officers that defendant's name was Hervey Momplaisir and that he discovered his identity in connection with a separate investigation that had resulted in an undercover purchase of cocaine. According to Det. Calonduono, a search warrant for defendant's apartment already had been prepared. The defendant argues to this Court that this evidence should have been excluded, that its probative value was substantially outweighed by its prejudicial effect, and that the trial justice abused his discretion in allowing its introduction.

The trial justice determined that this testimony was not offered for the forbidden purpose of proving defendant's guilt by evidence of bad character. Rather, he determined that evidence that defendant had identified himself as Gerall Francois and had been the target of a separate two-month drug investigation was appropriately admitted to establish the circumstances under which defendant was arrested and that he had intentionally provided the police with a false name. The trial justice found that this testimony "goes directly to the identity of the defendant, goes to the defendant's knowledge and intent with regard to the charge in this case" and was relevant and admissible for the jury to

determine whether this defendant knowingly and intentionally engaged in criminal behavior. The trial justice observed that the defense posture was that Momplaisir was merely a passenger in the Pathfinder—an innocent bystander to this narcotics trafficking—such that it was appropriate under Rule 404(b) for the jury to be informed that, although he maintained at trial that he was not connected with the sale of crack cocaine, defendant nonetheless found it necessary to lie about his true identity and deceive the arresting officers. The trial justice allowed the testimony into evidence and, following its introduction, gave an appropriate limiting instruction to the jury. Rule 404(b) of the Rhode Island Rules of Evidence, *"Other crimes, wrongs or acts"* provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

On appeal, the state argues that the trial justice did not abuse his discretion in determining that both the challenged statements were relevant to the jury's determination of defendant's intent to engage in the illicit distribution of cocaine. We concur and are satisfied that the trial justice was not clearly wrong in finding that evidence of defendant's sale of cocaine to an undercover officer before his arrest was relevant and that its relevancy was not outweighed by the risk of unfairly prejudicing defendant, a risk significantly reduced by a timely cautionary instruction. Finally, we conclude that defendant provided the police with a false identification with the intent to avoid detection and prosecution; such an affront to law enforcement and the judicial process demonstrates guilty knowledge of the crime, the identity of the offender, a lack of accident or mistake, and amounts to consciousness of guilt. *See State v. Collins*, 543 A.2d 641, 647 (R.I.1988) (use of false identity to avoid detection is inconsistent with an innocent intent and may be considered as circumstantial evidence of guilt). An offender who intentionally attempts to suppress his true identity in an effort to avoid prosecution should not expect to be shielded from the facts under which his perfidy is disclosed and will not find a safe harbor in the Rules of Evidence.

## Conclusion

For the reasons stated herein, the defendant's appeal is denied and dismissed and the judgments of conviction are affirmed. The papers in this case may be remanded to the Superior Court.

Justice Lederberg participated in all proceedings but deceased prior to the filing of this opinion.