### STATE

v.

### John BERGEVINE.

No. 2007–13–C.A.

Supreme Court of Rhode Island.

March 14, 2008.

for National failed to articulate any disparity  between the law of these jurisdictions.

Craig Montecalvo, Esq., Smithfield, for State.

Mark Smith, Esq., North Smithfield, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

A father unexpectedly returned home to discover his neighbor performing depraved and loathsome acts upon his seventeen-month-old daughter. Exercising remarkable restraint in light of his expertise in the martial arts, the father resisted any impulse to do physical harm and called 911 instead. The neighbor, John Bergevine (defendant), now appeals from his conviction by a jury of one count of first-degree child molestation for which he received a sentence of life imprisonment. For the reasons set forth in this opinion, we affirm the judgment of conviction.

## I

### Facts and Procedural History

Dale Matheson lived with his wife and seventeen-month-old daughter, in North Kingstown, Rhode Island, in the first-floor apartment of a three-story house. The defendant lived on the third floor of the same house. The defendant was friendly with the Mathesons and would join them for dinner and holidays. Occasionally, defendant would watch the child while Mr. and Mrs. Matheson were at work.

At trial, Mr. Matheson testified that on January 7, 2004, he left for work while his daughter and defendant were watching cartoons on television. Mr. Matheson expected defendant to baby-sit the child for

about two hours until Mrs. Matheson returned from her employment. As Mr. Matheson, the head mechanic at an automobile dealership, made his way to work, he realized he had left a dealer's license plate at his home that he needed to retrieve. When Mr. Matheson returned to his apartment, he found the door locked even though he had left the door unlocked a few minutes earlier. Mr. Matheson returned to his truck, grabbed his keys, and unlocked the front door of his apartment. Mr. Matheson entered his apartment and walked into the living room, where he had left the dealer's license plate. Mr. Matheson then made his way to the bathroom and opened the door, striking defendant's leg with the door as he did so.

Next, Mr. Matheson testified, he looked around the door and saw defendant rubbing his erect penis on his daughter's vagina. She was lying on a rug with her shirt pulled up, her sweatpants taken off one leg and pulled down to the ankle on the other, and her diaper removed. According to Mr. Matheson, defendant's sweat pants were pulled down to his ankles, and one of his legs was draped over the toddler so their genitals could touch.

Mr. Matheson said that he made eye contact with defendant, then ran into the living room, picked up the telephone, and dialed 911. He told the 911 operator what he had just observed and requested that the police come to his apartment immediately. Mr. Matheson, who is a third-degree black belt, testified that he was concerned that he might seriously injure or kill defendant if the police did not arrive shortly. While Mr. Matheson was on the telephone with the 911 operator, defendant approached Mr. Matheson and began begging Mr. Matheson to hang up the telephone. The defendant told Mr. Matheson that he would "do anything" including moving away if Mr. Matheson would just

hang up the telephone and forget he was there. Mr. Matheson replied, "[y]ou're lucky I don't kill you, you son of a bitch."

Mr. Matheson testified that his daughter, who was unable to dress herself, was now fully clothed and had walked out of the bathroom, through the kitchen, and into the living room toward her father. The defendant rushed toward Mr. Matheson with his fists clenched and tried to escape from the apartment. Mr. Matheson, while still on the telephone with the 911 operator, grabbed a sword and pointed it at defendant, telling defendant to "Back off!" The defendant opened up the living room window and jumped through the screen, escaping the apartment. Mr. Matheson later stated that he did not engage defendant in a physical altercation because of the child's close proximity to both men.

Mr. Matheson said that defendant then ran up the stairs to his apartment on the third floor of the building. Shortly thereafter, defendant came back down the stairs to the porch on the first floor. Mr. Matheson was also standing on the porch while still speaking on the telephone with the 911 operator. The defendant once again begged Mr. Matheson to stop speaking with the 911 operator. As the police pulled up to Mr. Matheson's apartment, defendant jumped over the porch balcony and ran away from the house. The first responding officer started a pursuit of defendant.

Detective Paul J. Barry responded to the call and arrived at Mr. Matheson's home. Detective Barry testified that he found Mr. Matheson in his apartment in an "[e]motionally traumatized" state, looking as though he had been crying. Detective Barry described Mr. Matheson as "breathing quickly. He was repeating the same words over and over again[.]" Detective Barry asked Mr. Matheson to describe

what he saw happen to his daughter. While Mr. Matheson tried to tell Det. Barry what he had witnessed, his body was moving from side to side and his arms were flailing. Mr. Matheson described to Det. Barry what he had observed, employing explicitly crude anatomical references to defendant's and his daughter's genitalia.

Mr. Matheson, his daughter, and Det. Barry then traveled to Hasbro Children's Hospital, where the child first was examined by a nurse and later examined by Carole Jenny, M.D., at the Child Safe Clinic. During Dr. Jenny's examination of the child, she found an acute abrasion inside the vaginal opening. Doctor Jenny testified that this type of abrasion usually heals within twenty-four hours, meaning the injury must have occurred within the last day. Doctor Jenny further testified that the child's injury is typically seen when people attempt vulvar coitus, which she explained as occurring when a penis is rubbed in a prepubertal child's genitals.

During the trial, the state introduced into evidence, over defendant's objection, a tape recording of the 911 telephone call, as well as Mr. Matheson's statements to Det. Barry. Additionally, various photographs of the screen that defendant allegedly jumped through to leave Mr. Matheson's apartment were entered into evidence. The state also presented several expert witnesses, including Dr. Jenny, who offered her expert testimony at trial about her examination of the child at the Child Safe Clinic.

At the end of the trial, the jury found defendant guilty of first-degree child molestation. The defendant filed a motion for new trial, which was heard and denied on April 18, 2006. The trial justice imposed a life sentence on May 23, 2006, and defendant timely appealed.

## II

## Discussion

The defendant raises three issues on appeal. He contends that the trial justice erred (1) by allowing the recording of Mr. Matheson's call to 911 to be entered into evidence, (2) by allowing Mr. Matheson's statements to Det. Barry to be entered into evidence, and (3) by denying defendant's motion for a new trial. We will address each of the issues below.

### A. Admission of the Tape Recording of the 911 Telephone Call

The defendant argues that the trial justice erred by allowing a tape recording of Mr. Matheson's telephone call to the 911 operator into evidence because the statements contained therein constituted hearsay evidence. The defendant makes the same argument about the statements Mr. Matheson made to Det. Barry. The defendant maintains that both sets of statements were hearsay[1] not falling within any exception to the rule against hearsay. Rule 802 of the Rhode Island Rules of Evidence. In the alternative, defendant asserts that the trial justice abused his discretion by allowing the statements into evidence because the evidence was needlessly cumulative and unfairly prejudicial under Rule 403 of the Rhode Island Rules of Evidence[2] in light of Mr. Matheson's testimony in court.

---

1. Rule 801(c) of the Rhode Island Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

2. Rule 403 of the Rhode Island Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue

It is well established that "[t]he admission of a statement under an exception to the hearsay rule is within the sound discretion of the trial justice and shall not be overturned unless clearly erroneous." *State v. Ruffner*, 911 A.2d 680, 689 (R.I. 2006) (quoting *State v. Lynch*, 854 A.2d 1022, 1038 (R.I.2004)). *See State v. Torres*, 787 A.2d 1214, 1222 (R.I.2002) (admissibility of an excited utterance is clearly within the trial justice's discretion and will not be overturned unless there is an abuse of discretion); *Estate of Sweeney v. Charpentier*, 675 A.2d 824, 827 (R.I.1996) (admissibility of the residual exception to the hearsay rule is clearly within the discretion of the trial justice and will not be overturned unless there was an abuse of discretion resulting in prejudice).

Two exceptions to the rule against hearsay are the excited utterance exception and the present sense impression exception. Rule 803(1) of the Rhode Island Rules of Evidence provides that a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter[,]" and Rule 803(2) describes an excited utterance as a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The rationale for exceptions to the rule against hearsay is that some statements, notwithstanding their nature as hearsay, possess "sufficient circumstantial guarantees of trustworthiness so as to justify admission of the statement even though the declarant is available and could be called to testify." Rule 803 Advisory Committee's Notes. An excited utterance contains such guarantees of trustworthi-

ness because "a startling event may produce an effect that temporarily stills the declarant's capacity of reflection and produces statements free of conscious fabrication." *State v. Krakue*, 726 A.2d 458, 462 (R.I.1999) (quoting Rule 803(2) Advisory Committee's Notes). "[A] statement made in response to a traumatic or startling event is a spontaneous utterance so long as it was made while the declarant 'was still laboring under the stress of [the] * * * experience.'" *Torres*, 787 A.2d at 1222 (quoting *Krakue*, 726 A.2d at 462).

Similarly, a present sense impression contains guarantees of trustworthiness because when a "statement is made contemporaneously with the event, there is no time for reflection or deception and no question about the accuracy of the declarant's memory." *State v. Momplaisir*, 815 A.2d 65, 70 (R.I.2003). A present sense impression is "a statement that is made simultaneously or with only a slight lapse of time from the event about which the statement relates." *Id.* "The rationale for the exception * * * is that the contemporaneity of the event and statement 'negative the likelihood of deliberate or conscious misrepresentation.'" *State v. Wright*, 817 A.2d 600, 605 (R.I.2003) (quoting Rule 803(1) Advisory Committee's Notes).

The gravamen of defendant's appellate argument is "that the available evidence leads to the conclusion that [Mr.] Matheson's statements were the product of reflection and fabrication, and lacked the indicia of reliability which is the lynchpin for admission under the present sense [impression] or excited utterance exception[s]." To support this thesis, defendant points only to the fact the screen was not seized as evidence and his contention that the photographs of the screen did not cor-

delay, waste of time, or needless presentation of cumulative evidence."

roborate Mr. Matheson's testimony that defendant jumped through the screen in his flight from the apartment.

We are satisfied that, on the contrary, Mr. Matheson's statements to the 911 operator were correctly characterized by the trial justice as both present sense impressions and excited utterances. The trial justice overruled defendant's objection to the 911 tape on the basis of the excited utterance exception to the rule against hearsay, but added "the State's further argument [present sense impression] gives support for the Court overruling that objection[.]" We are satisfied that the trial justice's rulings were well within the scope of his ample discretion in evidentiary matters. He specifically found that Mr. Matheson "was laboring under a condition of stress or excitement caused by the event which [he] claimed to have witnessed."

The evidence clearly supports the trial justice's ruling. Mr. Matheson testified he had observed his friend and neighbor performing an unspeakable act of sexual molestation upon his toddler daughter. His anger and agitation is unmistakable in the tape recorded conversation with the 911 operator that occurred immediately after he perceived this horrific event. At one point he can be heard to intone: "I need an officer now, before I kill this mother fucker." Significantly, the tape recording captures Mr. Matheson's statements to defendant when the latter came out of the

bathroom, begged Mr. Matheson to hang up the telephone, and then attempted to flee. Mr. Matheson can be heard describing defendant's actions as they occur. At this point he is describing an ongoing crime contemporaneously with its commission, specifically, defendant's efforts to cover up the molestation and then his efforts to flee the scene. Clearly, Mr. Matheson had no time for reflection or fabrication.

Further, the fact that Mr. Matheson was laboring under the excitement of a startling event during his telephone call with the 911 operator is corroborated by the testimony of Det. Barry who subsequently arrived at the scene. Even at that time, according to Det. Barry, Mr. Matheson appeared to be "[e]motionally traumatized," breathing quickly, at times crying and "repeating the same words over and over again[.]"

It is clear to us that the trial justice did not abuse his discretion in admitting the tape recording of the 911 telephone call as both an excited utterance and a present sense impression. Nor do we consider it unduly prejudicial or needlessly cumulative. It was no doubt damaging to defendant's cause; nevertheless it was highly relevant and a permissible means for the state to attempt to prove its case beyond a reasonable doubt. Moreover, defendant did not raise a Rule 403 argument at trial and it is therefore waived.[3] *See State v. Merced,* 933 A.2d 172, 174 (R.I.2007).

---

**3.** We also observe that the admission of the 911 tape recording does not implicate, nor does defendant so argue, an issue under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). *Davis* and *Crawford* stand for the proposition that testimonial statements are subject to the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Davis,* 126 S.Ct. at 2273, 2274–76; *see also State v. Feliciano,* 901 A.2d

631, 640–41 (R.I.2006). The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." A declarant who makes a testimonial statement is a "witness" within the meaning of the Confrontation Clause and must be available for cross-examination by the defendant. *See Davis,* 126 S.Ct. at 2273; *State v. Day,* 925 A.2d 962, 980 (R.I.2007).

## B. Admission of Mr. Matheson's Statements

■ Likewise, Mr. Matheson's statements to Det. Barry fell within the excited utterance exception to the rule against hearsay. At trial, the state argued that it proffered the statements to show that Det. Barry took the actions he did (specifically driving with Mr. Matheson to the hospital) based on the representations that were made to him by Mr. Matheson. Additionally, the state asserted that Mr. Matheson's statements to Det. Barry fell within the excited utterance exception to the rule against hearsay. The trial justice ruled that the excited utterance exception applied because "according to Detective Barry's testimony, [Mr. Matheson] appeared very emotionally upset, breathing quickly, repeating the same words over and over. Detective Barry observed Mr. Matheson from a close distance, [it] appeared that he was crying, he seemed mad, his body language suggested that he was in an emo-tional state of mind." As a result, the trial justice stated that even if the statements were offered for the truth of the matter asserted, they were admissible under the excited utterance exception. The trial justice's ruling in this regard is a patently sustainable exercise of his discretion.

## C. Motion for a New Trial

■ The defendant next argues that the trial justice erred in denying his motion for a new trial. The defendant contends that the trial justice failed to acknowledge several "deficits" in Mr. Matheson's testimony. Specifically, defendant contends that Mr. Matheson's testimony that he walked away from a man who was in the act of sexually molesting his seventeen-month-old daughter was incredible. The defendant also asserts that Mr. Matheson's use of vulgar slang to describe his daughter's genitalia seriously undermined his credibility. Next, defendant says that the trial justice failed to recognize that the

In *Davis*, the United States Supreme Court reviewed the testimonial nature of 911 calls. The Court declined explicitly to provide an exhaustive classification of all conceivable testimonial or nontestimonial statements, instead offering the following general definition: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 126 S.Ct. at 2273–74; *see also State v. Pompey*, 934 A.2d 210, 214 (R.I. 2007). The controversy in *Davis* centered upon the admissibility of the beginning of a 911 call during which the witness described events as they were happening and identified the defendant. *Davis*, 126 S.Ct. at 2270–71. *Davis* reasoned that a "911 call, * * * at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.* at 2276. Accordingly, the *Davis* Court determined that the beginning of the 911 call was not testimonial because the witness "sp[oke] about events *as they were actually happening,*" and had the primary purpose of enabling police assistance to meet an ongoing emergency. *Id.* at 2276–77.

As in *Davis*, Mr. Matheson's 911 call was not testimonial in nature. Mr. Matheson described events as they were happening. He described defendant's actions and his whereabouts with the primary purpose of enabling police assistance. The police arrived as defendant took flight from the apartment building, after which Mr. Matheson terminated the 911 call. This is clearly not a situation in which Mr. Matheson's conversation with the 911 operator evolved into testimonial statements after the emergency ended. *See id.* at 2277. Moreover, Mr. Matheson did, in fact, testify at trial and was thus available for cross-examination.

photographs of the screen defendant allegedly jumped through contradicted Mr. Matheson's testimony because, he argues, no adult would have been able to fit through a tear that size. Finally, defendant asserts that the trial justice misconceived the evidence when he ruled that Dr. Jenny's testimony corroborated that of Mr. Matheson. He contends rather that Dr. Jenny's opinion was based upon the history given to her by Mr. Matheson and was not an independent finding. As a result of these "deficits," defendant submits that the verdict failed to do substantial justice, and that the trial justice erred in denying his motion for a new trial. We disagree.

■ This Court has articulated the standard when ruling on a motion for a new trial stating "[i]n deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Gomez*, 848 A.2d 221, 234 (R.I.2004) (quoting *State v. Otero*, 788 A.2d 469, 472 (R.I.2002)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.* "If, however, 'the trial justice finds that the state has failed to sustain its burden of proof, a new trial must be ordered.'" *Id.* (quoting *Otero*, 788 A.2d at 472 and *State v. Clark*, 603 A.2d 1094, 1096 (R.I.1992)). "Provided that the trial justice has 'articulated an adequate rationale for denying a motion,' * * * a trial justice's ruling on a new trial motion is entitled to great weight." *State v. Hesford*, 900 A.2d 1194, 1199 (R.I.2006) (quoting *State v. Rieger*, 763 A.2d 997, 1002 (R.I.2001)). Accordingly, "[a] trial justice's ruling on a new-trial motion will not be overturned unless the trial justice was clearly wrong or unless he or she

overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *State v. Lynch*, 854 A.2d 1022, 1046 (R.I.2004) (quoting *State v. Bolduc*, 822 A.2d 184, 187 (R.I.2003)).

We first note that defendant failed to bring any of these issues to the attention of the trial justice. His entire argument on his motion for a new trial was as follows:

"This wouldn't be so much of an argument as my client's opportunity to address the Court and to ask the Court, in accordance with the rule, to use its independent judgment with respect to the statements of the witnesses, weigh the credibility of the evidence and assess the case in light of the charge that it gave to the jury and come to the Court's independent opinion as to the outcome of the verdict."

The defendant's appellate argument has therefore been waived.

Furthermore, we are satisfied the trial justice appropriately discharged his responsibilities in evaluating the motion for a new trial. He reviewed the essential evidence, and said he "was impressed with what [he] considers to be the credibility of Mr. Matheson * * *." He also observed that the medical finding by Dr. Jenny of an acute abrasion inside the child's vagina was consistent with Mr. Matheson's testimony. Finally, the trial justice, exercising his own independent judgment of the evidence, said he would have reached the same conclusion that the jury did, *i.e.*, "that the State established beyond a reasonable doubt that the defendant did, in fact, commit the offense which he was accused of." As a result, the trial justice denied defendant's motion for a new trial.

This Court is satisfied the trial justice did not overlook or misconceive material evidence in finding that the defendant committed first-degree child molestation,

and he articulated adequate rationale for denying the motion. Affording the trial justice's findings the great weight to which they are entitled, we cannot say he was clearly wrong.

### III

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction and remand the papers to the Superior Court.