STATE

v.

Danilo A. CERDA.

No. 2007–133–C.A.

Supreme Court of Rhode Island.

Oct. 20, 2008.

Jane McSoley, Providence, for Plaintiff.

Catherine Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**OPINION**

Justice SUTTELL, for the Court.

A fateful combination of pugnacity and racial animus resulted in the senseless

beating and shooting death of sixteen-year-old Errol Clinton on July 31, 2005. The defendant, Danilo A. Cerda, who was not implicated in the shooting itself, was convicted by a jury of assaulting Errol Clinton with a dangerous weapon, to wit, his hands and feet. Contending that the jury's verdict was against the weight of the evidence and failed to do substantial justice, the defendant asserts on appeal that the trial justice's denial of his motion for a new trial constitutes reversible error. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that the appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of conviction.

### Facts and Procedural History

The salient evidence adduced at Mr. Cerda's trial was as follows:

On the evening of July 30, 2005, three African–American youths, Errol Clinton, his seventeen-year-old brother, Julius Clinton, and their friend, Terrell Judd, decided to attend a party at the South Side Recreation Center, located off of Thurbers Avenue in Providence. They arrived at the recreation center after 11:30 p.m., but were denied admission because the building was filled to capacity. After being turned away, they decided to walk to a nearby party that Julius had heard about.

Julius, Errol, and Terrell walked down Sackett Street and turned onto Balcom Street, a small dead-end street, where they encountered loud merengue music and a large gathering of people,[1] none of whom they knew.[2] They quickly decided to leave. Julius testified that as they were turning around to go home, they were approached by "some Spanish kid," later identified by other witnesses as "Nef" or "Nefi" Cristostomo, who gave them a dirty look, then brought himself face-to-face with Errol and asked "What you n* * * * *s looking at?" According to Julius, Cristostomo then punched Errol in the face. Errol and his attacker fell to the ground fighting while a crowd descended on the scene. Julius was punched on the left side of his face and momentarily lost consciousness. He testified that he lost consciousness for a few seconds. When he revived, his brother and Terrell were gone, and the crowd had moved away in the direction of Broad Street. As Julius got up and began to run toward Broad Street, he heard gunshots. Soon thereafter, he saw someone he knew who drove him to the hospital[3] and told him that Errol had been shot and killed.[4]

Three other witnesses testified to observing the melee, and it is their testimony that is at issue on appeal. First among them was Kelbis "Ziggy" Espaillat, who testified that he was on Balcom Street at the home of his cousin, Richard Perez, on the evening of July 30, 2005. He spent most of the evening on his cousin's third-floor porch, across the street from the

---

1. The witnesses variously estimated the crowd to number anywhere from over 50 to 500 people.

2. Julius testified that, in fact, his friend Terrell recognized one girl there. She tapped Terrell on the shoulder and walked past them. That was the extent of their encounter.

3. Julius was treated for a broken eye socket and needed stitches in his nose.

4. The defendant was not charged with Errol Clinton's murder. Another party guest, Eddie Gonzalez, gave chase when Errol tried to run away from the fight and shot him to death.

party, with about nine other people. From there, Espaillat said that he could see approximately 200 people at the party below. At some point in the evening, he observed an altercation between a dark-skinned teenager and someone he knew as "Nef" Cristostomo. Espaillat saw Cristostomo approach "the young kid" and start "whaling on him and punching him and stuff." He stated that although the lighting on the street was not good, the fight was only about thirty feet away. Although Espaillat said that a crowd started gathering around, which blocked his view, he testified that he saw Cristostomo's friends, including defendant, whom Espaillat knew as "Payo," join in the fight. According to Espaillat, he observed defendant kicking the teenager in his head, back, and stomach area as he lay on the ground. At some point, Espaillat left the porch and tried to get closer. When he got to the street, he saw one boy on the ground; "Nef" and "Payo" had "disappeared" toward Sackett Street.

Espaillat admitted that when he was questioned by police later that night, he gave them a false name because he did not want to be involved or "give [his] name out to the public." He did not provide his real name until he was questioned about the murder of his cousin, Richard Perez, in June 2006, almost a year after the incident in question. Espaillat further testified that he despised defendant.

The next witness, Joseph Sibilia, attended the party on Balcom Street on July 30, 2005. He testified to observing the events at issue from the first-floor porch where Richard Perez lived. He said that he was on the porch with a number of other people, including Espaillat. According to Sibilia, Cristostomo and defendant encountered Errol Clinton as they walked down Balcom Street toward the crowd. He testified that Cristostomo "bumped into" Errol Clinton and then the two started fighting. Unlike the other witnesses, he said that Errol was getting the better of Cristostomo. When Cristostomo cried out for help, his friends responded by joining in the violent encounter; among those who joined in was defendant, who kicked Errol in the face. He said that about twenty males started beating and kicking Errol. Eventually, Errol got up and ran toward Sackett Street when, Sibilia testified, Eddie Gonzalez shot the fleeing youth with a .357-caliber magnum.

At the time of trial, Sibilia was incarcerated at the Adult Correctional Institutions for perjuring himself before the grand jury concerning the circumstances surrounding the shooting death of Errol Clinton. Sibilia initially told the police he did not see any of the attackers. Later he attempted to provide his friend Eddie Gonzalez with a false alibi to protect him, and he blamed Cristostomo for the shooting. He testified that he lied before the grand jury because he was being threatened by Gonzalez's family. Sibilia told the jury that he had agreed to testify for the state about the events that unfolded on Balcom Street on July 30–31, 2005, in exchange for a reduced sentence on perjury charges and a dismissal of drug charges.

Faberik Duarte, the final witness, was also at the party on Balcom Street. Duarte, who was on home confinement for a drug-possession charge, testified that he briefly left the party to comply with the terms of his 8 p.m. curfew. He later snuck out of his house to return to Richard Perez's front porch. He estimated that between 200 and 300 people were in the vicinity of the party. Cristostomo, he said, appeared on Balcom Street around 11 p.m. and soon began fighting with a dark-skinned youth. Duarte testified that Cristostomo knelt on top of the youth, kicking and punching, until the boy broke away

briefly, only to be caught by defendant, also known to Duarte as "Payo." Unlike the other witnesses, Duarte said that defendant started fighting with the youth at the corner of Balcom and Sackett Streets, kicking and punching him "everywhere." Eventually, Duarte said, the boy broke free and ran away, with the crowd following him. Duarte testified that he then "[saw] a loud flash and [Gonzalez] was tucking away the gun."

Duarte admitted that he initially had lied to the police during questioning, out of fear of retaliation, telling them that he was home that evening to meet the curfew time stipulated by the terms of his sentence.

■ On December 12, 2006, the jury returned a guilty verdict on the charge "that defendant * * * assaulted Errol Clinton with dangerous weapons, namely his hands and feet" pursuant to G.L. 1956 § 11–5–2.[5] Thereafter, the trial justice denied Mr. Cerda's motion for a new trial and sentenced him to seven years, with eighteen months to serve. The defendant has timely appealed his conviction.

On appeal, defendant contends that the trial justice was clearly wrong in denying his motion for new trial because "the jury's verdict was against the fair preponderance of the evidence and failed to do substantial justice." He suggests that the witness testimony is so contradictory and unreliable as to create reasonable doubt of defendant's guilt. Moreover, defendant contends that "the autopsy photographs and report failed to substantiate the witnesses' account that the victim was repeatedly kicked in the face and head." The state responds that although each witness's testimony contained deficiencies and inconsistencies, each consistently "told the jury

that the defendant assaulted the victim shortly before he was murdered."

## Standard of Review

■ The standard to be applied in reviewing a motion for new trial has been oft-repeated and is well settled in this jurisdiction. *See Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). When passing on a motion for new trial, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008) (quoting *State v. Gomez*, 848 A.2d 221, 234 (R.I. 2004)). In so doing, "the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007) (quoting *State v. Morales*, 895 A.2d 114, 121 (R.I.2006)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.* (quoting *Gomez*, 848 A.2d at 234 and *State v. Otero*, 788 A.2d 469, 472 (R.I. 2002)). If, however, the trial justice finds that the state has failed to prove the defendant's guilt beyond a reasonable doubt, a new trial must be ordered. *Bergevine*, 942 A.2d at 981; *State v. Pona*, 926 A.2d 592, 615 (R.I.2007).

■ On review by this Court, a trial justice's ruling on a motion for new trial is entitled to great weight provided that he has "articulated an adequate rationale for

---

**5.** An individual's hand—and, by extension, one's feet—"when employed in such a manner as to be likely to produce substantial bodily harm, may properly be qualified as a dangerous weapon." *State v. Zangrilli*, 440 A.2d 710, 711 (R.I.1982).

denying a motion." *Bergevine*, 942 A.2d at 981 (quoting *State v. Hesford*, 900 A.2d 1194, 1199 (R.I.2006) and *State v. Rieger*, 763 A.2d 997, 1002 (R.I.2001)). "A trial justice's ruling on a new-trial motion will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *State v. Lynch*, 854 A.2d 1022, 1046 (R.I.2004) (quoting *State v. Bolduc*, 822 A.2d 184, 187 (R.I.2003)).

### Discussion

■ In denying defendant's motion and applying the aforementioned standard of review, the trial justice noted that Kelbis Espaillat, Joseph Sibilia, and Faberik Duarte all initially lied about what they had observed regarding the assault of Errol Clinton. The trial justice recognized that there were discrepancies in the witnesses' testimony, but noted that "credibility issues are essentially matters for the jury." He stated further:

> "From my vantage point, as a front-row observer, I cannot say that this jury was unwarranted in accepting the testimony of these witnesses that identified this defendant as being among the culprits, including Nef [Cristostomo], who assaulted Errol Clinton. At best, reasonable minds could differ as to whether to accept or reject the testimony of these young men. [Twelve] jurors unanimously chose to accept their testimony, and I do not think that they were unjustified in doing so."

We are satisfied that the trial justice articulated adequate reasoning for denying the motion for new trial. *See Bergevine*, 942 A.2d at 981. It cannot be said that the trial justice was "clearly wrong" in concluding that the defendant assaulted Errol Clinton. *See Lynch*, 854 A.2d at 1046. Notwithstanding the inconsistencies in the witnesses' testimony regarding the assault, each one testified that he specifically observed the defendant kicking and/or punching the youth. The trial justice did not overlook or misconceive any material and relevant evidence, nor was he clearly mistaken in choosing which testimony to accept and reject. *See id.* On the contrary, he appropriately assessed the witnesses' credibility and determined that the evidence could cause reasonable minds to differ as to the outcome of the case. *See Schloesser*, 940 A.2d at 639. Accordingly, it is our opinion that the trial justice did not err by ruling that a new trial was not warranted.

### Conclusion

For the reasons stated in this opinion, the judgment of conviction appealed from is affirmed. The record in this case shall be remanded to the Superior Court.