STATE

v.

**James PERKINS.**

No. 2007–161–M.P.

Supreme Court of Rhode Island.

March 24, 2009.

Jane M. McSoley, Providence, for Plaintiff.

Catherine Gibran, Providence, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

This case came before the Supreme Court on January 26, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this petition for certiorari should not summarily be decided. The defendant, James Perkins (defendant), was charged by way of grand jury indictment with robbery in the first degree by use of a dangerous weapon, robbery in the first degree in which the victim is injured, conspiracy to commit robbery, and using a firearm while committing a crime of violence. After a jury trial in the Superior Court, the defendant was found guilty of conspiracy to commit robbery and now seeks appellate review of the judgment of conviction.[1] After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown, and we shall decide this appeal without further briefing and argument. We affirm the judgment of the Superior Court.

### Facts and Travel

At trial, Carlos Villamil (Villamil) testified that on June 14, 2005, around 11 p.m., he was driving his white van in Providence, intending to buy milk. While

---

1. Although defendant's private counsel failed to file a timely notice of appeal, a petition for writ of certiorari, filed on behalf of defendant by the Public Defender's office, was granted by this Court on June 7, 2007.

stopped at the intersection of Broad and Gallatin Streets in Providence, his van was hit from behind by a vehicle described as a green van decorated with a gold stripe. Villamil stated that after the collision, his van came to rest facing a wall on Gallatin Street and two men got out of the green van. One of the men walked over to the driver's side of Villamil's vehicle and spoke to him. However, Villamil does not understand English very well and the only word he recognized was "police." The second man approached the passenger side of his van, at which point the two men spoke to each other in English; but, once again, Villamil did not understand the conversation. According to Villamil, he was afraid of these men because the man standing by the driver's-side door—later identified as defendant—had a gun in the waistband of his pants.

Villamil testified that when the man on the passenger side of his van tried to open the door, defendant struck him in the face with a firearm, injuring the left side of his face near his eye. The victim lost consciousness, and he next recalled being on the ground two blocks away, with several people beating him. His wallet was taken, along with documents and money. An ambulance took him to the hospital, where he remained overnight, having suffered fractures to his eye, nose, and jawbone. On June 15, 2005, Villamil viewed a photo lineup and identified defendant as the person who assaulted him with the gun.

Ramona Nunez (Nunez), an eyewitness, testified that she and her boyfriend were driving on Broad Street on the evening of June 14, 2005, when she noticed a white van that she recognized as belonging to Villamil, her former coworker. She also saw another van, which was darker in color and had a gold stripe, behind Villamil's van. It appeared to Nunez that the two vehicles had been in an accident. She then saw several men leave the dark van and approach Villamil's vehicle. According to the witness, these men began arguing with Villamil and then pushed him from the driver's seat; they got into the vehicle and drove off with Villamil still in his van. The darker van followed Villamil's vehicle. Nunez called 9–1–1, and she and her boyfriend followed the vehicles to the intersection of Niagara and Sackett Streets, where they saw Villamil lying on the ground. Nunez testified that she called Villamil's wife and waited until help arrived.

Providence police Detective Robert Melaragno (Det. Melaragno) testified that he responded to a report of a disturbance at 285 Niagara Street on the night in question. He was informed by another officer at the scene that a man had been attacked and had been taken to the hospital. Detective Melaragno was informed that the assailants left in a green vehicle with Rhode Island registration ZA 553. He relayed this information to the department and proceeded to the hospital, where he spoke with Villamil through an interpreter. The complainant described one of his assailants as a black man between the ages of eighteen and twenty, with a mustache and shoulder-length braided hair, wearing black jeans and a striped shirt. Detective Melaragno also testified that the next day the victim viewed several photo arrays and identified defendant as his assailant.

Officer George Duarte (Officer Duarte) of the Providence Police Department testified that he was on patrol the night of June 14, 2005, with his partner, Officer Al Gonzalvez (Officer Gonzalvez), and was called to Rhode Island Hospital so that Officer Gonzalvez could translate for Villamil. The officers listened to Villamil's description of the assailants' vehicle, and they later heard a police broadcast with the vehicle's registration. Several hours later, at 2:30 a.m., Officer Duarte and his

partner saw a vehicle matching the description of the green van. They pursued the van into a parking lot and, with the assistance of other officers, removed the driver and defendant, who was seated in the rear passenger seat. These men were taken into custody. Officer Duarte testified that he noticed that there was some front-end damage to the green van, but he added that neither he nor his partner searched the vehicle.

At the conclusion of the state's case, the defense rested without presenting any evidence. The defendant moved for a judgment of acquittal on all counts, except for the charge of conspiracy to commit robbery.[2] The case subsequently went to the jury on two counts, robbery and conspiracy to commit robbery, and defendant was convicted of conspiracy to commit robbery only.

In his motion for a new trial, defendant argued that in finding him not guilty of robbery, the jury was unconvinced by Villamil's identification of defendant as the assailant, and, therefore, there was insufficient evidence to convict defendant of conspiracy to commit robbery. The trial justice denied the motion, and a judgment of conviction was entered on March 23, 2007.

Before this Court, defendant argues that the evidence in this case was insufficient to support a conviction of conspiracy to commit robbery and that the trial justice erred in denying his motion for a new trial based on the sufficiency of the evidence. The state responds that the trial justice properly reviewed the evidence and denied defendant's motion for a new trial.

### Standard of Review

■ When a trial justice considers a motion for a new trial, he or she "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Cerda*, 957 A.2d 382, 385 (R.I.2008) (quoting *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008)). "In so doing, 'the trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury.'" *Id.* (quoting *State v. Schloesser*, 940 A.2d 637, 639 (R.I.2007)). "If, after conducting this independent review, the trial justice agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Id.*

■ On appeal, this Court accords great weight to a trial justice's ruling on a motion for a new trial, provided that he or she has "articulated an adequate rationale for denying a motion." *Cerda*, 957 A.2d at 385–86 (quoting *Bergevine*, 942 A.2d at 981). We will not overturn the ruling "unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *Id.* at 386 (quoting *State v. Lynch*, 854 A.2d 1022, 1046 (R.I.2004)).

### Analysis

We are satisfied that in this case the trial justice performed the required analysis and provided an adequate rationale for denying defendant's new-trial motion.

■ Conspiracy is "an agreement by two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." *State v. Day*, 925 A.2d

---

**2.** The trial justice granted defendant's motion for judgment of acquittal on the charge of using a firearm in the commission of a violent crime.

962, 975 (R.I.2007) (quoting *State v. Lassiter*, 836 A.2d 1096, 1104 (R.I.2003)). "Once an agreement has been made, no further action in furtherance of the conspiracy is necessary to find a defendant guilty of the crime of conspiracy." *State v. Disla*, 874 A.2d 190, 197 (R.I.2005) (quoting *Lassiter*, 836 A.2d at 1104). In this case, the trial justice properly instructed the jury that to convict defendant of conspiracy, the jury must find, beyond a reasonable doubt, that defendant entered into an agreement to do an illegal act and that he did so intentionally and with an understanding of the unlawful nature of the agreement.

■■ The trial justice also instructed the jury that evidence of the conspiracy could be either direct or circumstantial. "We previously have recognized that there seldom will be direct evidence of an explicit agreement to commit an unlawful act, and that the existence and scope of a conspiracy often must be 'inferentially established by proof of the relations, conduct, circumstances, and actions of the parties.'" *Disla*, 874 A.2d at 197 (quoting *Lassiter*, 836 A.2d at 1104). "Circumstantial evidence, indeed, 'may be sufficient to support a conviction,'" so long as "the totality of the circumstantial evidence presented to the finder of fact constitutes proof of guilt beyond a reasonable doubt." *Id.* (quoting *State v. Rodriguez*, 798 A.2d 435, 437 (R.I.2002)). In the present case, we agree with the trial justice's conclusion that the circumstances surrounding the attack on Villamil and the conduct of the assailants were sufficient to convict defendant of conspiracy to commit robbery.

The credible and consistent testimony of the state's witnesses revealed that on the night of June 14, 2005, defendant did not act alone; rather, the evidence establishes that he worked in concert in a scheme to rob Villamil. Both Villamil and Nunez testified that a green van collided with Villamil's van, causing it to crash into a wall, at which point defendant, accompanied by another man, got out of the green van and approached Villamil's vehicle. When the man on the passenger side of the white van distracted Villamil, defendant struck Villamil in the head, rendering him unconscious. The defendant then drove away in the victim's van and the other vehicle followed him. Two blocks away, Villamil was removed from his vehicle, beaten, and robbed by several people who then fled the scene in the same green van. Less than three hours later, defendant was apprehended while riding in that same green van, and he subsequently was identified as Villamil's assailant.

Although there is no direct evidence of an agreement between Villamil's assailants, the circumstantial proof of a conspiracy is manifest in this record. The evidence in this case clearly establishes that the defendant participated in a coordinated attack on a defenseless man that began with an ambush of his vehicle and ended with a robbery and severe beating—all of which was testified to by an eyewitness. We agree with the trial justice that, based on the totality of the evidence, the jury reasonably could conclude, beyond a reasonable doubt, that the defendant entered into an agreement with others to commit the crime of robbery.

## Conclusion

In this case, the jury was satisfied beyond a reasonable doubt that the defendant entered into a conspiracy to commit the crime of robbery. The trial justice considered a motion for a new trial and performed the analysis required of him. In denying the motion for a new trial, the trial justice articulated a rationale that was more than adequate and did not overlook or misconstrue the material evidence. Therefore, the judgment of the Superior

Court is affirmed and the case may be remanded to the Superior Court.